PRIEST *v.* STATE.

Opinion delivered June 12, 1922.

1. CONTINUANCE—ABSENCE OF WITNESS FROM STATE.—It was not error, in a murder case, to refuse a continuance to enable defendant to secure the attendance of absent witnesses who had left the State to engage in farming, and of whose return there was no assurance.

2. HOMICIDE—EVIDENCE OF MOTIVE.—In a prosecution for murder where there was a conflict in the evidence as to who was the aggressor, proof that defendant was engaged in the illicit manufacture of liquor and of the relation of deceased and members of his family thereto was admissible as tending to establish a motive for the killing and defendant's attitude towards deceased.

3. CRIMINAL LAW—BYSTANDERS' BILL OF EXCEPTIONS—TIME FOR FILING.—Where the trial court gave defendant 60 days to present and file a bill of exceptions, a bystanders' bill of exceptions not filed within the time allowed was ineffectual.

4. CRIMINAL LAW—BILL OF EXCEPTIONS—EXTENSION OF TIME.—A trial judge in vacation has no power to extend the time for filing a bill of exceptions.

Appeal from Bradley Circuit Court; *Turner Butler,* Judge; affirmed.

*Clary & Ball, Robt. L. Rogers* and *R. W. Wilson,* for appellant.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *Wm. T. Hammock,* Assistants, for appellee.

McCULLOCH, C. J. Appellant was indicted by the grand jury of Bradley County for murder in the first degree, alleged to have been committed by shooting and killing Elmer Kennedy on October 21, 1921, and on the trial of the cause appellant was convicted of murder in the second degree.

Appellant was the owner of a farm in Bradley County, and the deceased, Elmer Kennedy, a young man

about twenty years of age, was a tenant, or share-cropper, on appellant's place. The deceased, his mother and his brothers were working together as share-croppers, or tenants, on appellant's farm.

The killing occurred on the public road along that part of the farm where the Kennedys lived. It appears from the testimony that there had been more or less ill feeling between appellant and Elmer Kennedy since the latter came on the farm during the month of May. For a short time before the day of the killing there had been a controversy about the division of the corn crop, and Norris, another tenant on the place, was called in as an arbitrator between them.

Appellant went to the farm with wagons, in company with Norris, for the purpose of gathering and dividing the corn. He was also accompanied by Young, another tenant on the place, and his son. There were two wagons, and they drove into the field, and the Kennedys, including Elmer, joined the party for the purpose of of assisting in gathering the corn and dividing it. After the two wagons had been loaded with corn they were driven outside of the field and were halted near each other on the public road. Appellant was in one of the wagons at the time, and the Kennedys, or some of them, including Elmer, were in the other wagon.

Elmer Kennedy went to the wagon containing the corn which had been assigned to him and his mother and brothers, and gathered a few of the best ears and placed them in the other wagon to repay the quantity of corn that had been used for roasting ears. After doing this, Elmer, according to the evidence, accosted Priest by asking him to go back into the field for the purpose of ascertaining the extent of damage done to the crop by hogs, so that there could be a settlement of that difference between them.

According to the testimony of the witnesses, Elmer Kennedy was standing leaning against one of the wagons at that time. He was totally blind in one of his eyes.

Witnesses stated that either Norris or Young was heard to say to appellant, "Now is your time," and that appellant thereupon got out of the wagon and approached Elmer Kennedy on the blind side and drew his pistol and shot him. The witnesses state that Kennedy was making no demonstration, and that the killing done by appellant was without provocation or justification.

There is a conflict in the testimony, but the evidence adduced by the State was sufficient to justify the finding of the jury that the facts were as just stated.

Appellant and the witnesses he introduced testified that Elmer Kennedy assaulted appellant with a knife and that his mother urged her sons to "clean him up," referring to appellant.

The issues were submitted to the jury upon instructions conceded to be correct, and there is no assignment of error with respect to the court's charge either in giving or refusing instructions.

It is first contended that the court erred in refusing to grant a continuance until the next term to enable appellant to procure the attendance of two absent witnesses, who were shown to be in the State of Mississippi. The court, after hearing evidence from which it appeared that the two witnesses had removed from Bradley County, Arkansas, to the State of Mississippi for the purpose of engaging in farming, announced the conclusion that it was not shown that the witnesses would probably return, and for that reason overruled the motion for a postponement. There was no request for a short postponement to give time for taking the depositions of the witnesses.

The circumstances were such, we think, that they justified the conclusion of the court that there was no reasonable probability of the absent witnesses returning into the jurisdiction of the court, and as a trial court is vested with discretion in such matters, we cannot say that there was any error in refusing to grant the continuance. The two absent witnesses were farmers, and

left the State in September for the purpose of engaging in farming in the State of Mississippi. There was nothing shown which would give rise to the conclusion that the witnesses would come back into the State until such time in the future as they might decide to make a visit or to move back here.

It is next contended that the court erred in permitting the State to introduce testimony concerning appellant's conduct in making, selling and transporting intoxicating liquors.

It was drawn out from some of the witnesses that appellant operated a still on the farm and that he clandestinely sold the output of the still, and that he proposed to deceased and his brothers to employ them on commission to assist him in disposing of the product. There were numerous circumstances proved concerning appellant's connection with the illicit manufacture and sale of liquor, but all of the testimony had reference to the relations between appellant, on the one side, and the deceased and his brothers on the other.

There is other testimony that there was a statement made at one time by appellant to a companion, in substance, that Elmer Kennedy was likely to tell what he knew about the illicit manufacture and sale of liquor by appellant. Elmer's father testified that about two weeks before the killing he met appellant at the gin where they had carried cotton, and that appellant asked, referring to Elmer, "What did you bring that damn boy up here for?" and added, "If you don't keep that boy away from here, I'm going to kill him."

Appellant introduced testimony tending to show that Elmer Kennedy had assaulted him several weeks before this occurred.

This testimony concerning the manufacture and sale of liquor by appellant was introduced, not for the purpose of proving other crimes committed by appellant, but to show the relations between the parties and the probable motive for the killing.

There was a conflict in the testimony as to which of the parties was the aggressor, and it was competent for the State to prove appellant's mental attitude toward the deceased, as reflected by their prior relations, friendly or unfriendly. Appellant would have been entitled to an instruction limiting the testimony to that purpose, but no such instruction was asked.

There is an assignment of error based on references made to this testimony by the prosecuting attorney in the argument before the jury, but since the testimony was competent, it was not improper for reference to be made to it in the argument.

Impeaching testimony was used very freely by both sides. The appellant introduced witnesses impeaching nearly every witness introduced by the State, and after eliciting from each witness the statement that the reputation of the witnesses sought to be impeached was bad, the following question was propounded: ''Basing your answer upon their general reputation for truth and morality, would you believe them under oath in a matter in which they are interested?'' The court sustained objections to this question, but it is not properly shown in the record what the answer of either of the witnesses would have been to this question. In fact, the record shows nothing except that the question was asked and that exceptions were saved by appellant's counsel.

Since the filing of the State's brief in this court, counsel for appellant have attempted to bring up an additional record by *certiorari* showing the exceptions certified by bystanders.

The motion for a new trial was filed and overruled on February 11, 1922, and the court gave appellant sixty days from that date within which to present and file a bill of exceptions. The bill of exceptions was signed by the court and filed within the time allowed, but it contained no reference to the subject-matter of the present exceptions; that is to say, it did not contain any reference to the substance of what the witnesses would have stated

in response to the excluded question. It appears from the additional record now brought up that on May 31 appellant procured the affidavits of two bystanders and presented the same to the the trial judge for approval as part of the bill of exceptions in the case, and, after obtaining from the judge a signed statement to the effect that he refused to approve what the affiants stated, the affidavits, with the certificate of the judge, were filed with the clerk and brought up here by certiorari. This was, as before stated, all done long after the expiration of the time for filing the bill of exceptions.

It has been established by a long line of decisions of this court, beginning with the case of *Fordyce* v. *Jackson*, 56 Ark. 564, that where an appellant attempts to add exceptions based upon the affidavits of bystanders, such exceptions must first be presented to the trial judge for allowance and rejected by him. This must, of course, be done within the time allowed by the court for filing the bill of exceptions. The trial judge has no power in vacation to extend the time allowed by the court for filing the bill of exceptions, and it is too late after the expiration of the time allowed to present the exceptions to the judge or to file the affidavits of bystanders. In other words, an exception certified by the affidavit of bystanders must be filed within the time allowed by statute or the order of the court, otherwise it is ineffectual.

This completes the discussion of all the assignments of error argued in the brief of counsel.

The instructions were, as before stated, free from any objections, and there is no assignment here with reference to them.

The evidence is abundant in support of the verdict.

·Judgment affirmed.