Claude WALLACE *v.* STATE of Arkansas

CR 93-127                                   862 S.W.2d 235

Supreme Court of Arkansas
Opinion delivered September 27, 1993
[Rehearing denied November 1, 1993.]

*Paul J. Tuefel* and *Martin E. Lilly*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Sandy Moll*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Claude Wallace, was convicted by a jury of two counts of rape, two counts of kidnapping, and one count of burglary and sentenced to two consecutive life sentences plus one hundred sixty (160) years in prison and a fine of fifteen thousand dollars ($15,000). Appellant raises five points on appeal.

On June 8, 1991, two sisters, M. W., who was twelve years old, and A. C., who was seven years old, were raped by a man who entered their home during the early morning hours.

Appellant first argues the trial court erred by refusing to suppress the in-court identification by M. W. because of a tainted pre-trial identification procedure.

> We will not reverse a trial court's ruling on the admissibility of an in-court identification unless that ruling is clearly erroneous under the totality of the circumstances. In making that determination, we first look at whether the pretrial identification procedure was unnecessarily suggestive or otherwise constitutionally suspect. It is the appellant's burden to show that the pretrial identification procedure was suspect.

*Dixon v. State*, 310 Ark. 460, 468-69, 839 S.W.2d 173, 178 (1992) (citations omitted).

The identification to which appellant objects was made within an hour of M. W.'s escape from her attacker. A police officer was taking M. W. to the hospital to be examined and took M. W. to view appellant on the porch of the house where he was found. Appellant was surrounded by police officers and was the

only black male on the porch. The officer asked M. W. to look at appellant and determine whether he was the one who raped her. When she viewed appellant, M. W. identified him as her attacker. While we find this identification procedure was probably impermissibly suggestive, that does not end our inquiry.

Even if the identification technique used is impermissibly suggestive, an in-court identification is admissible if the identification in question is reliable. *Bishop* v. *State*, 310 Ark. 479, 839 S.W.2d 6 (1992).

> [I]t is for the trial court to determine if there are sufficient aspects of reliability surrounding the identification to permit its use as evidence and then it is for the jury to decide what weight the identification testimony should be given. Further, we do not reverse a trial court's ruling on the admissibility of an identification unless it is clearly erroneous, and we do not inject ourselves into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification.

*Id.* at 482, 839 S.W.2d at 8 (citation omitted).

Having found the pretrial identification procedure impermissibly suggestive, we must determine whether there were sufficient aspects of reliability surrounding the identification to permit its use. The factors used in measuring reliability are: (1) the opportunity of the identifying witness to observe the accused at the time of the criminal act; (2) the lapse of time between the occurrence and the identification; (3) any inconsistencies in the description given by the witness; (4) whether there was prior misidentification; (5) the facts surrounding the identification; (6) and all other matters relating to the identification process. *Dixon*, 310 Ark. 460, 839 S.W.2d 173.

We turn now to the facts of this case and address each of these factors:

1. The opportunity to view. M. W. was in the same room with her attacker for approximately four hours, during which time she testified he forced her to kiss him and to have oral, vaginal and anal sex with him. M. W. testified that while her head was covered most of the time with a shirt, she did remove the shirt at one point when it was getting light and she got a look at her attacker's face.

2. The lapse of time. M. W. was taken to view appellant less than an hour after she escaped from her attacker.

3. The accuracy of the description. M. W. described her attacker as a tall black male, with short hair, wearing blue jeans either without a shirt on or with a blue t-shirt. M. W. also told police that appellant would have vomit on him because he had thrown up during the rape and she had also thrown up. Appellant is a tall black male with short hair. When police found appellant less than an hour after M. W. escaped, he was wearing blue jeans with a dried substance on them which was later determined to be vomit. Appellant was not wearing a shirt when the officers found him lying on the couch in the house, but put on a blue t-shirt which was lying near the couch when officers asked him to get dressed.

4. Prior misidentification. M. W. never identified anyone other than appellant as her attacker.

5. The surrounding facts. When M. W. viewed appellant, he was the only black male present and he was surrounded by police officers. M. W. was driven by appellant's residence by a police officer to see if she could identify appellant.

6. Other matters. Two days later M. W. picked appellant out of a photo line-up composed of six photographs of black males with similar build and hair as appellant. While M. W. initially picked two photographs that might be her attacker, she narrowed it down and picked appellant. M. W. also said at the time of the photo line-up she was positive it was appellant who raped her. Under the circumstances of the case, we cannot say M. W.'s in-court identification was unreliable. Thus, the trial court did not err in refusing to suppress M. W.'s in-court identification.

Appellant next argues there was no probable cause to arrest him. While an invalid arrest may call for the suppression of a confession or other evidence, it does not entitle the defendant to be discharged from responsibility for the offense. *O'Riordan* v. *State*, 281 Ark. 424, 665 S.W.2d 255 (1984). Appellant has not alleged that any evidence should have been suppressed as a result of his allegedly illegal arrest. An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution nor as a defense to a valid conviction. *United States* v. *Crews*, 445 U.S. 463 (1980).

Appellant's third argument on appeal is that the trial court erred when it refused to grant a mistrial because the courtroom deputies left handcuffs and a metal detector on a table which appellant alleged was in view of the jury. A mistrial is an extreme and drastic remedy which should only be granted when there has been an error so prejudicial that justice cannot be served by continuing the trial. *Richmond* v. *State*, 302 Ark. 498, 791 S.W.2d 691 (1990). There was no such error in this case.

The hearing in chambers reveals that the handcuffs and metal detector were left on a side table which was being used by appellant and his counsel to prepare for trial. The trial judge stated he didn't even think the jurors were able to see the handcuffs and metal detector and denied the motion. We have held that brief encounters between a defendant in restraints and jurors is not necessarily prejudicial. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991). Here, there is no evidence the jury saw appellant in restraints, only that the jurors may have seen handcuffs and a metal detector on a table across the room from appellant. The trial judge has the discretion to take security measures. Handcuffs and metal detectors are commonly used security measures. In this instance, there is no evidence the presence of the handcuffs and metal detector on a table across the room from appellant was prejudicial. *Wainwright* v. *State*, 302 Ark. 371, 790 S.W.2d 420 (1990), *cert. denied*, 111 S. Ct. 1123 (1991).

Appellant next argues it was error for the trial judge to allow A. C.'s mother to accompany her to the witness stand while she testified. Appellant objected to A. C.'s mother accompanying her to the witness stand because she might "nod her head or grab [A. C.'s] hand." Although appellant alludes in his argument to the fact that A. C.'s mother was holding her while she testified, there is no evidence of this in the transcript. The only discussion in the transcript concerned A. C.'s mother "accompanying" her to the witness stand.

We first note that under Ark. R. Evid. 616 A. C.'s mother had the right to be present in the courtroom during the trial. Ark. R. Evid. 616; *Kester* v. *State*, 303 Ark. 303, 797 S.W.2d 704 (1990). Appellant contends it may have been possible for A. C.'s mother to communicate non-verbally with

her, but there is no evidence such communication occurred and the mother was instructed by the trial judge not to make any comments. Whether it was improper for the trial judge to allow the victim's mother to accompany her to the witness stand is of no consequence since appellant has not shown that any prejudice resulted. Prejudice is not presumed and we do not reverse absent a showing of prejudice. *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984), *cert. denied*, 470 U.S. 1085 (1985).

For his last argument on appeal, appellant argues the trial court erred in not dismissing the charges against him for violation of the speedy trial rule. Ark. R. Crim. P. 28.1(b) requires trial to be held within twelve (12) months of appellant's arrest, excluding necessary periods of delay authorized by Ark. R. Crim. P. 28.3. Here, it is undisputed the time for trial commenced running on June 8, 1991, the date of appellant's arrest. The trial began on July 13, 1992, 35 days after the speedy trial period.

Once it has been determined that a trial is held after the speedy trial date has expired, the state has the burden of showing that any delay was the result of appellant's conduct or was otherwise legally justified. *Hubbard* v. *State*, 306 Ark. 153, 812 S.W.2d 107 (1991). We note that Ark. R. Crim. P. 28.3(i) requires the trial court to enter written orders or make docket notations specifying the reasons for the delays and the specific dates or number of days to be excluded. *Id*. Here, the court made no such written orders or docket notations. However, the court's failure to make such notations does not result in automatic reversal. *Id*. When a case is delayed by the accused and that delaying act is evidenced by a record taken at the time it occurred, that record may be sufficient to satisfy the requirements of Ark. R. Crim. P. 28.3(i). *Hubbard*, 306 Ark. 153, 812 S.W.2d 107.

Appellant in this case filed a motion for psychiatric evaluation on July 29, 1991. This motion was granted on October 4, 1991, and an order for commitment to the Arkansas State Hospital not to exceed thirty days was filed on that same day. Appellant was evaluated by Tom Heisler, Ph.D., at the Craighead County Jail on April 13, 1992. Ark. R. Crim. P. 28.3(a) provides:

The following periods shall be excluded in computing

the time for trial:

> The period of delay resulting from other proceedings concerning the defendant, including but not limited to an examination and hearing on the competency of the defendant and the period during which he is incompetent to stand trial, hearings on pretrial motions, interlocutory appeals, and trials of other charges against the defendant. No pretrial motion shall be held under advisement for more than thirty (30) days, and the period of time in excess of thirty (30) days during which any such motion is held under advisement shall not be considered an excluded period.

Thus, thirty (30) days can be excluded from the time period during which the trial court was deciding appellant's motion for psychiatric evaluation. That leaves only an additional five days for which the state must account. The time period from October 4, 1991, to April 13, 1992, is also excludable since this delay resulted from appellant's request for a psychiatric evaluation. Ark. R. Crim. P. 28.3(a). Thus, the state has met its burden and the trial was held within the speedy trial requirements.

Under Ark. Sup. Ct. R. 4-3(h), the record has been reviewed concerning the rulings made against appellant by the trial judge during the trial, and we find no error. For the reasons stated above, we affirm.