Robert Lee JONES *v.* STATE of Arkansas

CR 95-33                                    916 S.W.2d 736

Supreme Court of Arkansas
Opinion delivered March 11, 1996

656

*Henry J. Swift*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Robert Lee Jones, appeals the judgment of the Mississippi County Circuit Court, filed on October 3, 1994, finding him guilty of one count of capital murder for the felony murder of Estella Black committed in April of 1993. Appellant was tried by a jury and sentenced to life imprisonment without parole. Jurisdiction is properly in this court pursuant to Ark. Sup. Ct. R. 1-2(a)(2). Appellant raises four arguments for reversal. We find no error and affirm the trial court's judgment.

## 1. Sufficiency of evidence

█ Appellant argues that there was insufficient evidence to support his conviction for capital murder. We consider this argument first because the double-jeopardy clause, as interpreted in *Burks* v. *United States*, 437 U.S. 1 (1978), precludes a second trial when a judgment of conviction is reversed for insufficient evidence. *Brenk* v. *State*, 311 Ark. 579, 847 S.W.2d 1 (1993); *Harris* v. *State*, 284 Ark. 247, 681 S.W.2d 334 (1984). Appellant has failed to preserve this issue for our review due to a lack of specificity in his motions for directed verdict below.

Appellant moved for a directed verdict at the close of the state's case, as follows:

THE COURT: Let the record reflect that the State having rested, we're in chambers at the request of the defense for the purpose of making a motion for a directed verdict challenging the sufficiency of the evidence.

MR. SWIFT [COUNSEL FOR DEFENDANT]: That's correct.

THE COURT: And the motion will be denied.

(End of hearing.)

Proceedings then resumed in the courtroom at which time the defense immediately rested. The record states that "defense renewed the motion for a directed verdict which was heard and denied."

█ It is well-established that a challenge to the sufficiency

of the evidence requires the moving party to apprise the trial court of the specific basis on which the directed-verdict motion is made. *E.g., Mitchell* v. *State*, 323 Ark. 116, 913 S.W.2d 264 (1996); *Haltiwanger* v. *State*, 322 Ark. 764, 912 S.W.2d 418 (1995). Neither appellant's original directed-verdict motion nor his renewal motion indicates that any specific deficiency in the evidence was called to the trial court's attention. Because there was a failure to raise the specific basis for a directed verdict at trial, appellant cannot now challenge the sufficiency of the evidence on appeal. *Pilcher* v. *State*, 303 Ark. 335, 796 S.W.2d 845 (1990).

## 2. Speedy trial

Appellant argues the trial court erred in denying his motion to dismiss on the ground that the state failed to timely bring him to trial. Ark. R. Crim. P. 28.1. Appellant's trial began on September 14, 1994, a date more than twelve months after the speedy-trial period began on April 9, 1993, when appellant was taken into custody and incarcerated from that point forward. Thus, appellant established a prima facie case that a speedy-trial violation occurred, and the burden shifted to the state to show the trial court that the delay was the result of the appellant's conduct or otherwise legally justified. *Clements* v. *State*, 312 Ark. 528, 851 S.W.2d 422 (1993). We find that the state met this burden.

On February 18, 1994, appellant filed a motion for continuance to obtain a psychological examination, to obtain discovery materials purportedly withheld by the state, and because:

> 4. As further grounds for this matter to be continued, the attorney for the Defendant has developed physical problems which will make it difficult for him to adequately represent the Defendant at trial. It is possible that the attorney for the Defendant may be hospitalized as a result of these physical problems in the next few days.

On February 18, 1994, appellant filed a separate motion for psychiatric examination. By order filed on February 22, 1994, the case was continued on appellant's motion to the first day of the next term of court on May 31, 1994. Appellant does not dispute, on appeal, the period of delay excluded under this order.

The gravamen of appellant's argument is that it was error to exclude the period of delay from May 31, 1994, until September 6, 1994, on the basis of the following order that was filed on September 13, 1994:

> Now, on this 12th day of *September*, 1994, upon Motion of the Defendant, *Robert L. Jones*, by and through his attorney, *Henry Swift*, IT IS HEREBY CONSIDERED, ORDERED AND ADJUDGED that the above-captioned case is continued from May 10, 1994 until September 6, 1994 due to the illness of Henry Swift.
>
> IT IS FURTHER ORDERED that the time between the dates be an excluded period of time within the meaning of the Speedy Trial Rules.

The September 13 order was signed by Circuit Judge Samuel Turner, Jr. The hearing on appellant's motion to dismiss was conducted by Circuit Judge Gerald Pearson.

Appellant argues that the September 13 order was obtained by the state, without action on the part of him or his trial attorney, Henry Swift, and was not reflected by any docket entry, as required by Ark. R. Crim. P. 28.3(i), and, therefore, the period of delay from May 31, 1994, until September 6, 1994, cannot be charged against him.

At the hearing on the motion to dismiss, the trial court requested evidence regarding the September 13 order. Deputy Prosecuting Attorney Richard Rhodes testified that, on or about May 9, 1994, he received a telephone call from Dr. Reggie Cullom, Mr. Swift's physician, who advised him that Mr. Swift was hospitalized, that Mr. Swift had informed him that he had a number of cases ready for trial in the upcoming term of court at the end of May, that Mr. Swift would be in no condition to try any cases in June, and asked that Mr. Swift's cases be continued due to his poor physical condition.

The trial court stated that pretrial criminal proceedings were held on May 10, 1994, for the term of criminal court that commenced on May 31, 1994. Mr. Rhodes testified that he went to the pretrial proceeding on May 10, 1994, and talked to Judge Turner, who indicated that he had also received a communication from Dr. Cullom.

Mr. Rhodes testified that, at the May 10, 1994 pretrial proceeding, Judge Turner announced that Mr. Swift was hospitalized and unable to try his cases in the upcoming term of court, and that all of Mr. Swift's cases were continued.

At the hearing on the motion to dismiss, Mr. Rhodes provided the trial court with a copy of a letter dated May 12, 1994, from Deputy Prosecutor Charles R. Easterling to Mr. Swift. Although the letter concerned another criminal case, it contained the following language that is pertinent to this appeal:

> At the Osceola pre-trial on May 10, Judge Turner advised that he had been advised that you were having significant health problems which have resulted in your hospitalization and also your unavailability to try cases during the upcoming criminal term commencing May 31. It was Judge Turner's understanding that you wished to have all of your cases continued on defense motion until the next term which is September 6.

The record shows that a copy of the May 12 letter was filed in this case on May 23, 1994. Mr. Rhodes testified that, when appellant filed the motion to dismiss in August 1994, he examined the court docket, found no entry for May 10th, and, thereupon, prepared a written order memorializing the continuance from May 10, 1994, until September 6, 1994, that was granted at the May 10, 1994 pretrial proceeding.

At the hearing on the motion to dismiss, Deputy Prosecuting Attorney Shannon Langston testified that, on September 13, 1994, she filed the order continuing the case from May 10, 1994, until September 6, 1994, after she talked with Judge Turner and showed him Mr. Easterling's letter. Ms. Langston testified that Judge Turner glanced at the letter, had no qualms about signing the continuance order, and said that he did not believe he had not made docket entries that day, was very sorry that he had not made docket entries, and did remember making an announcement before court. Ms. Langston also testified that Mr. Guy Long, who had been described by Mr. Swift as someone "I could have and did have so he could sit with me at trial," was present in court on May 10, 1994, and "was in agreement."

At the hearing on the motion to dismiss, Mr. Swift testified

that he was hospitalized in Memphis, Tennessee, from May 3, 1994, until his discharge on May 31, 1994. Mr. Swift did not controvert the fact that Judge Turner orally continued all of Mr. Swift's cases on May 10, 1994. Mr. Swift testified, however, that he did not request a continuance from May 31, 1994, and that neither Dr. Cullom nor Mr. Long was authorized to act for him or appellant.

The trial court determined that the delay from May 10, 1994, to September 6, 1994, was excludable by order of Judge Turner, and denied the motion to dismiss, stating:

> Now, perhaps it's unfortunate — well, it's certainly true that Mr. Swift did not file a motion for continuance for the May term of court. No docket entry was made by the Court at that time. However, it is abundantly clear to the Court in reconstructing the record as to what actually transpired that the case was set for the May '94 session of court, that Mr. Swift was ill, hospitalized for a period of 27 days, three weeks or so, having been discharged on May 31st, the date set for trial.

> It's clear abundantly to the Court that the State would not have been able to proceed to trial on May the 31st and subpoenaed witnesses and have them here for trial on that date under the circumstances. It's grossly unfair that the State would be penalized for not having tried the case at the May 31st session of court under the circumstances.

> Communication was had with the judge and prosecuting authorities that Mr. Swift was not physically able to try the case during that period of time.

■ We find no error in the trial court's ruling. First, the period of delay from May 31, 1994, to September 6, 1994, is excludable, pursuant to Ark. R. Crim. P. 28.3(h), for good cause. Appellant does not contest the fact of the continuance that was ordered at the May 10, 1994 pretrial proceeding, only that he did not request the continuance. However, we have held that, even absent a defendant's specific request for a continuance, a trial delay that is attributable to the defendant may constitute "good cause" for exclusion of the delay, pursuant to Rule

28.3(h). *E.g., Lynch* v. *State*, 315 Ark. 47, 863 S.W.2d 834 (1993) (delay occasioned by defendant's motion to remove his court-appointed counsel); *Clements*, 312 Ark. 528, 851 S.W.2d 422 (delay occasioned by the trial court's removal of defense counsel who were found negligent and held in contempt of court); *Lewis* v. *State*, 307 Ark. 260, 819 S.W.2d 689 (1991) (delay occasioned by the defendant's motion to sever filed on the eve of trial). In this case, we do not hesitate to attribute the continuance that was ordered at the May 10, 1994 pretrial proceeding to appellant, inasmuch as it was a necessary and reasonable accommodation to him occasioned by the undisputed illness and hospitalization of his trial counsel until the first day of the criminal court term, May 31, 1994.

█ █   Second, although Judge Turner did not set forth the excluded period in a written order or docket entry on May 10, 1994, as required by Rule 28.3(i), we have held that a trial court's failure to comply with Rule 28.3(i) does not result in automatic reversal of the conviction if a contemporaneous record is made that reveals the delaying act is attributable to the accused. *Wallace* v. *State*, 314 Ark. 247, 862 S.W.2d 235 (1993). In *Clements*, 312 Ark. 528, 851 S.W.2d 422, we held that a *nunc pro tunc* order prepared and filed by the prosecution to memorialize a continuance that was attributable to the accused was sufficient where the record also reflected that the continuance was memorialized in the proceedings at the time. *Accord Lewis*, 307 Ark. 260, 819 S.W.2d 689. In this case, although no contemporaneous record was made by Judge Turner when he orally continued the case on May 10, 1994, by reason of Mr. Swift's health problems, Judge Turner remedied that oversight by the order that was filed on September 13, 1994. Further, the record contains the May 12, 1994 letter of Mr. Easterling, which also sets forth the dates and basis for the May 10 continuance, as memorialized in the September 13 order. This case is distinguishable from other decisions in which we have found that, in addition to the trial court's noncompliance with Rule 28.3(i), the state failed to prove that the disputed delay was legally justified. *E.g., Hicks* v. *State*, 305 Ark. 393, 808 S.W.2d 348 (1991) (finding the trial court's order excluding period of delay violated Rules 28.3(b) and 28.3(i)); *Turbyfill* v. *State*, 312 Ark. 1, 846 S.W.2d 646 (1993) (finding no proper

continuance indicating the reasons for delay was granted by the trial court when continuance was ordered). In the present case, in contrast, the state has clearly demonstrated that the disputed delay was the result of appellant's conduct. This record is sufficient to satisfy Rule 28.3(i).

Finally, the record reveals a docket entry dated September 6, 1994, that provides: "Cont. to 9/14/94 for mo. Speedy Trial." We understand this entry to memorialize a trial delay from September 6, 1994, until September 14, 1994, as a result of appellant's motion to dismiss. Appellant does not dispute, on appeal, this excluded period of delay. On September 14, 1994, the trial commenced.

On this record, the state has met its burden of showing that the delay was legally justified. Therefore, the trial court did not err in denying the motion to dismiss.

### 3. Motion to suppress

Appellant makes the following statement in his brief to this court:

> [A]ppellant feels he should call attention to the fact that he was questioned for 4 days, without benefit of the presence of Counsel or family, before giving the so called confessions; and that he never signed the statements.

> Appellant feels the Lower Court was in error in not requiring greater proof the voluntariness of the confession.

By this statement, we understand appellant argues that the trial court erred in denying his motion to suppress two separate oral statements that he gave while in custody at the police department. In each statement, appellant declared that he believed he killed the victim. The first statement was given on Saturday, April 10, 1993, 4:11 p.m.; the second statement was given on Sunday, April 11, 1993, 3:30 p.m. Both statements were tape recorded and subsequently transcribed. At trial, the recordings of both statements were admitted into evidence and played.

At the evidentiary hearing on the suppression motion, testimony was given by Osceola Police Department Officers J.C. Brewer and A.C. Simmons, appellant, and Osceola District Municipal Court Judge William Lee Fergus. At the conclusion

of the hearing, the trial court ruled both statements were voluntarily given prior to appointment of defense counsel for appellant, and denied the suppression motion.

■ We have stated that, on appeal, we make an independent determination of the voluntariness of a confession, but, in doing so, " 'we review the totality of the circumstances and will reverse only when the trial judge's finding of voluntariness is clearly against the preponderance of the evidence.' " *Trull* v. *State*, 322 Ark. 157, 160, 908 S.W.2d 83, 84 (1995) (quoting *Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991)). We do not reverse unless the trial court's finding is clearly erroneous, recognizing that conflicts in the testimony are for the trial court to resolve. *Id.*

Appellant testified at the suppression hearing that he was released after he was questioned the first time, but was detained at the jail after he was picked up the second time. Appellant testified that Officer Simmons "kept asking me . . . and I kept telling him I didn't know." Other evidence introduced at the suppression hearing reveals that appellant was questioned and released on April 7, 1993, arrested on April 9, 1993, and detained by the police thereafter. Officers Brewer and Simmons identified five copies of a form document that informed appellant of his legal rights and waived those rights. Those documents were respectively dated April 7, 1993, 2:00 p.m.; April 9, 1993, 8:50 a.m.; April 10, 1993, 9:00 a.m.; April 10, 1993, 4:11 p.m.; and April 11, 1993, 3:30 p.m. The record of the suppression hearing does not reveal any other interviews during the period from April 7 to April 11, 1993.

At the suppression hearing, appellant testified that Officer Simmons read something to him at the jail, which he did not really understand because he (appellant) was under the influence of alcohol. When asked again at the suppression hearing whether he understood what Officers Simmons and Brewer had read to him, appellant testified that he could not remember. Officer Simmons recalled that he detected no alcohol from appellant's person or in his manner or speech when he drove appellant to the jail.

The waiver form for the April 10 recorded statement was introduced into evidence at the suppression hearing and is dated

April 10, 1993, 4:11 p.m. Officer Brewer testified that, prior to the April 10 recorded statement, he read the waiver form to appellant and appellant verbally responded in the affirmative to each question listed thereon. Officer Brewer stated that Officer Simmons was present during the reading of the waiver form, that appellant was asked to sign the waiver form if he understood his rights, and that appellant signed the waiver form in his presence. Officer Simmons corroborated Officer Brewer's testimony. Both officers signed the waiver form and were present at the ensuing interview.

The waiver form for the April 11 recorded statement was not introduced into evidence at the suppression hearing or at trial, but the testimony from the suppression hearing reveals that it is dated April 11, 1993, 3:30 p.m. Both officers testified that the waiver form for the April 11 interview was read, acknowledged, and signed by appellant and by both of them in the same manner as described for the April 10 recorded statement. Both officers testified that Officer Brewer left after the April 11 waiver form was read and signed, and was not present at the interview that day. Officer Simmons testified that he was off-duty on Sunday, April 11, and that the interview that day was initiated by appellant when the station contacted him at home and informed him that appellant wanted to talk to him.

Appellant testified that Officer Simmons told him that he would help him and get him some help. Both officers testified that no force or coercion was used on appellant or any promises made to him to obtain either of the recorded statements.

It is undisputed that appellant was not accompanied by an attorney when the two recorded statements at issue were given. Appellant testified that Officer Simmons did not ask him if he wanted a lawyer. Officer Simmons testified that he specifically recalled informing appellant that he had a right to an attorney, and that appellant never asked for one. Appellant testified that "they" told him he had a lawyer. When asked at the suppression hearing who he was told was his lawyer, appellant testified that he had not known at the time.

Judge Fergus testified that he conducted the probable-cause proceeding at Officer Brewer's office on Sunday, April 11. Judge Fergus recollected that the probable-cause proceeding

occurred in the afternoon, possibly late afternoon, and that, just before he went to the police station, a statement had been taken from appellant that afternoon. Judge Fergus testified that, although the probable-cause affidavit indicated that bond was set and a public defender appointed, those matters would not have been done until the next day in court. Officer Simmons testified that the April 11 statement was given before appellant was bound over.

■ On this record, appellant has not demonstrated that the trial court's finding that both of the recorded statements were voluntarily given prior to appointment of defense counsel is clearly erroneous. The conflicts in the testimonies were for the trial court to resolve. *Trull*, 322 Ark. 157, 908 S.W.2d 83. Therefore, the trial court did not err in denying the motion to suppress.

### 4. Tape recordings and transcriptions

Appellant argues that the trial court erred in refusing "to dismiss" the two tape recordings that were the subject of the aforementioned suppression hearing and the transcripts of those statements when they were offered at trial.

At trial, Officer Brewer identified the original tape recording of the April 10 statement, which was introduced into evidence, without objection, and played for the jury. Over appellant's objection, the trial court instructed the jury that they would be permitted to have a transcription of the recording to aid in understanding the recording and that, if any discrepancies were noted, they must consider only the tape recording as it was the evidence and the transcription was just an aid. The transcription was not admitted into evidence. After the tape recording was played, the secretary who prepared the transcription testified that, at the beginning of the transcript, she had typed April 12 as the date of the interview. The secretary testified that that date had been changed in ink by someone else to read April 10. The secretary testified that, without listening to the tape, she did not know if the date she had typed was a typographical error or not.

Appellant moved to strike the April 10 statement on the ground that it was taken with the knowledge that counsel had

been appointed to represent him and had not been informed of the interview. The trial court denied the motion to strike, stating that the discrepancy in the date had previously been addressed at the suppression hearing and that Officer Brewer had there testified that, when he noticed the clerical error on the transcription, he had manually corrected it so that it stated the correct date of the recorded statement, which was April 10. The trial court stated that if the recording itself stated that the interview occurred on April 12, then appellant would be heard further.

The state then conceded that the disputed date was not a part of the recording. On cross-examination, Officer Brewer testified that the statement of the date was not on the tape, that whoever typed the transcript put it there, that he had manually changed the date from April 12 to April 10, and that the interview recorded was that conducted on April 10, 4:15 p.m. Appellant did not renew his motion to strike.

We observe that, at the hearing on the motion to suppress the April 10 and April 11 recorded statements, Officer Simmons stated that he never interviewed appellant after the April 11 probable-cause proceeding.

■ The transcription of the challenged recording, as noted, was never admitted into evidence. On this record, we do not find that appellant has demonstrated as clearly erroneous the trial court's finding that the April 12 date in the transcription was a simple clerical error. Therefore, the trial court did not err in denying the motion to strike the recording of the April 10 statement.

■ Appellant argues that the April 11 tape recording and its transcription, which was prepared by a different secretary, should have been dismissed due to the possibility of taint. This argument, which is based upon a false premise, is clearly without merit.

### Conclusion

In accordance with Ark. Sup. Ct. R. 4-3(h), the record has been reviewed for prejudicial errors objected to by appellant but not argued on appeal, and no such errors were found in this case.

Affirmed.

DUDLEY and NEWBERN, JJ., dissent.

DAVID NEWBERN, Justice, dissenting. It was the State's burden to show that the delay of Robert Lee Jones's trial from May 31, 1994, until September 10, 1994, was attributable to Mr. Jones. To bear that burden the State was required to show a written order or docket entry. Ark. R. Crim. P. 28.3(i). The majority opinion concludes the continuance from May 10, 1994, to September 10, 1994, was attributable to Mr. Jones. To exclude the time from the speedy trial period, the docket entry must be made at the time the continuance is granted to the defendant. *Turbyfill* v. *State*, 312 Ark. 1, 846 S.W.2d 646 (1993); *Hicks* v. *State*, 305 Ark. 393, 808 S.W.2d 348 (1991). No such docket entry was made, and that should be the end of this case.

The majority opinion cites no evidence whatever that Mr. Jones either made a continuance motion for the period in question or was aware of one having been made on his behalf. In the belated *nunc pro tunc* continuance order, signed and entered the day before the trial began on September 14, 1994, it is stated that Mr. Jones sought a continuance through his counsel. Judge Pearson specifically found that Mr. Swift did not make such a motion on Mr. Jones's behalf. In considering the matter he said:

> It's certainly true that Mr. Swift did not file a motion for continuance for the May term of court. No docket entry was made by the court at that time. However, it is abundantly clear to the court in reconstructing the record as to what actually transpired that the case was set for the May 1994 session of court, that Mr. Swift was ill, hospitalized for a period of 27 days, three weeks or so, having been discharged on May 31st, the date set for trial.

What we have in the way of reconstruction of the record is a letter from a special prosecutor, Mr. Easterling, saying that Judge Turner continued Mr. Swift's cases, and the testimony of two other prosecutors about a continuance granted on the basis of phone calls by a doctor. We do not even have in the record any testimony by the doctor that he was requested by anyone to inform the Court of Mr. Swift's illness, much less evidence that

he was authorized to request a continuance on Mr. Jones's behalf.

Even if we could say that Mr. Swift's hospitalization until May 31, 1994, might have been good cause to continue Mr. Jones's trial until some later date, the State made no showing why the case was not tried in June, July, or August of 1994. In his remarks, Judge Pearson noted that the case was once set for August 10, 1994, but was inexplicably not tried on that date. Although there are references to various "terms of court," according to Ark. Code Ann. § 16-13-1002(a)(1)(ii) (Repl. 1994), the term of court of the Circuit Court in the Osceola District of Mississippi County begins on the fourth Monday in February and runs for one year. Subsection (b) of that statute provides that the courts of the Second Judicial District shall always be open for the transaction of business on all matters over which they have jurisdiction except on days excluded by law. Again, we are left with no docket entry or other contemporaneous record of any further continuance or reason why the case was not tried after the recorded continuance ended May 31, 1994.

In a puzzling way, the majority opinion cites and seems to rely on *Wallace v. State*, 314 Ark. 247, 862 S.W.2d 235 (1993), and *Clements v. State*, 312 Ark. 528, 851 S.W.2d 422 (1993), which emphasized the need for a contemporaneous record of any continuance. In the *Clements* case we honored a *nunc pro tunc* order only because the continuance was otherwise memorialized on the record at the time it was granted. The majority opinion in the case now before us says "Judge Turner remedied that oversight by the order filed on September 13, 1994." No explanation is given as to how his *nunc pro tunc* order complied with the requirement of a contemporaneous docket entry or other record of the granting of the continuance.

To affirm on the basis of "other good cause" or Judge Turner's belated order is directly contrary to our decision in the *Hicks* case. There we reversed and dismissed a conviction because of violation of the speedy trial rule and the lack of any writing or record of a continuance. We said:

> Although it is not expressly stated in the rule, we have said that a trial court should enter written orders or make docket notations *at the time continuances are*

*granted to detail the reasons for the continuances* and to specify to a day certain, the time covered by such excluded periods (emphasis added). *McConaughy* v. *State*, 301 Ark. 446, 784 S.W.2d 768 (1990); *Cox* v. *State*, 299 Ark. 312, 772 S.W.2d 336 (1989). In order to provide any impetus behind Rule 28.3, we must adhere to this language; otherwise, there is no need for the rule.

We noted that the only docket entry made in an attempt to comply with the rule in the *Hicks* case was made nine days after the speedy trial period had run. In this case, the State originally had until April 9, 1994, to bring Mr. Jones to trial. The time was properly extended until May 31, 1994. The only written record of any further continuance appeared 105 days thereafter. If the right of the accused and the public to have trials conducted in accordance with our rules designed to bring accused persons to trial promptly are to have any meaning, this case should be dismissed.

I respectfully dissent.

DUDLEY, J., joins.