Bruce MACE *v.* STATE of Arkansas

CR 96-993                                     944 S.W.2d 830

Supreme Court of Arkansas
Opinion delivered May 19, 1997
[Petition for rehearing denied June 23, 1997.]

*Ralph M. Cloar, Jr.*, and *William H. Craig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen. and *Thomas M. Carpenter*, Little Rock City Att'y, by: *Anthony M. Black*, Asst. City Att'y, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The appellant, Bruce Mace, was charged with driving while intoxicated, making an illegal left turn, and refusing to submit to a chemical test. He was convicted in municipal court and appealed to circuit court. After granting Mace's motion to dismiss the refusal-to-submit charge, the circuit court found him guilty of driving while intoxicated and making an illegal left turn. Mace appeals his convictions, and the State cross-appeals the dismissal of the refusal-to-submit charge. We affirm the decision of the circuit court on direct appeal, but declare error on cross appeal.

On August 21, 1995, at approximately 3:00 a.m., Little Rock Police Officer Charles Weaver was patrolling the area of 12th, 13th, and Woodrow Streets in Little Rock. He observed Mace's vehicle make a left turn without signaling. According to Officer Weaver, Mace's vehicle made what he termed a "bootleg" turn, or a crossing over the centerline into the opposite lane of traffic. When Officer Weaver stopped Mace's vehicle, he observed that Mace had extremely bloodshot eyes, was very unsteady on his feet, and had to hang on his vehicle for support. Officer Weaver administered four field sobriety tests to Mace, all of which he failed. In the officer's opinion, Mace had been driving while intoxicated. He further observed that Mace's passenger, Caroline Grafton, had six rock-like substances resembling crack cocaine in her hand. She was placed under arrest for possession of cocaine. Grafton told Officer Weaver that the rocks belonged to Mace.

Officer Ray Moreno arrived at the scene to assist Officer Weaver. He testified that Mace failed the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. Thereafter, Mace was transported to the Pulaski County Detention Center, where Officer Moreno advised him of his rights under the implied-consent law. Mace signed a form and marked the section indicating that he understood his rights. Officer Moreno then requested that Mace submit to a breath-alcohol-content (BAC) test. Mace agreed to take the test, which revealed

no alcohol in his bloodstream. Believing that Mace was under the influence of some type of drug, Officer Moreno then requested that Mace submit to a blood test. He also gave Mace the option of taking a urine test. According to Officer Moreno, Mace did not want any tests. Because Mace refused to submit to a blood test, Officer Moreno charged him with violation of the implied-consent law.

At the close of the State's case, the circuit court dismissed the refusal-to-submit charge, but denied Mace's motions to dismiss the driving-while-intoxicated and improper-left-turn charges. At the close of all the evidence, Mace renewed his motions on these charges, and the motions were again denied. The circuit court found Mace guilty as charged, sentenced him to one day in jail with credit for one day served, suspended his driving privileges for ninety days, ordered that he complete an approved alcohol treatment program, and fined him $150.00. For making an improper left turn, the circuit court fined Mace $50.00.

*Sufficiency of the evidence*

■ The general rule with respect to sufficiency of the evidence is:

> The evidence to support a conviction, whether direct or circumstantial, must be of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. *Smith v. State*, 308 Ark. 390, 824 S.W.2d 838 (1992). We will affirm the verdict of the trial court, if it is supported by substantial evidence, and circumstantial evidence may constitute substantial evidence. *Hill v. State*, 299 Ark. 327, 773 S.W.2d 424 (1989). To be sufficient to sustain a conviction, the circumstantial evidence must exclude every other reasonable hypothesis consistent with innocence. *Bennett v. State*, 308 Ark. 393, 825 S.W.2d 560 (1992).

*Igwe v. State*, 312 Ark. 220, 849 S.W.2d 462 (1993); *Lukach v. State*, 310 Ark. 38, 834 S.W.2d 642 (1992).

■ A person can be found guilty of driving while intoxicated if he or she (1) operates a motor vehicle while intoxicated; or (2) operates a motor vehicle while having a blood-alcohol con-

tent of .10 percent or more. Ark. Code Ann. § 5-65-103(a) and (b) (Repl. 1993). The term "intoxicated" as used in the DWI offense includes being "influenced or affected by the ingestion of alcohol, a controlled substance, any intoxicant, or any combination thereof." *See* Ark. Code Ann. § 5-65-102(1) (Repl. 1994). A DWI conviction is not dependent upon evidence of blood-alcohol content in view of sufficient other evidence of intoxication. *State v. Johnson*, 326 Ark. 189, 931 S.W.2d 760 (1996); *Tauber v. State*, 324 Ark. 47, 919 S.W.2d 196 (1996).

In this case, Mace asserts that the State failed to prove an essential element of the DWI offense — that his driving skills were impaired as a result of ingestion of a controlled substance. However, both Officers Weaver and Moreno testified that, in their opinions, Mace was intoxicated. Opinion testimony regarding intoxication is admissible. *State v. Johnson, supra*; *Long v. State*, 284 Ark. 21, 680 S.W.2d 686 (1984). Particularly, Officer Weaver observed that Mace had extremely bloodshot eyes, was very unsteady on his feet, and had to hang on his vehicle for support.

In support of his argument that the evidence was insufficient to support his conviction for driving while intoxicated, Mace relies on the court of appeals's decision in *Roach v. State*, 30 Ark. App. 119, 783 S.W.2d 376 (1990). In that case, the court of appeals held that the State failed to show that Roach was driving under the influence of a controlled substance due to the absence of any showing that an empty bottle of prescription pills in Roach's car contained a controlled substance. The facts in the present case are easily distinguishable from those in *Roach*. Here, we have substantial evidence gleaned from field sobriety tests, whereas no tests were performed in *Roach*.

In the present case, there was testimony that Mace failed all four of the field sobriety tests that were administered to him. During the eye-gaze nystagmus test, Mace could not follow a moving object smoothly with either eye. According to Officer Weaver, Mace had nystagmus prior to and beyond 45 degrees in both eyes. His pupils were also dilated.

During the walk-and-turn test, Mace could not keep his balance and had to grab his vehicle for support. He attempted to

begin the test before the instructions were finished. He stopped twice to steady himself while walking, and, rather than walking heel to toe as instructed, took extremely long steps. Although he was told to keep his arms at his sides at all times during the test, Mace used them for balance. He stepped off the line four times, and took an incorrect number of steps down and back.

■ Mace was also administered the one-leg-stand test. During this test, he swayed while trying to balance himself and had to put his foot down on three occasions. The finger-count test was administered to Mace a total of five times. He failed each test. In sum, the officers' observations constitute competent evidence supporting the DWI charge. *State v. Johnson, supra*; *Gavin v. State*, 309 Ark. 158, 827 S.W.2d 161 (1992).

■ Mace was also convicted for making an improper left turn in violation of Little Rock City Ordinance § 32-271. Officer Weaver testified that he observed Mace's vehicle make a left turn without signaling and watched as the vehicle crossed over the centerline into the opposite lane of traffic when making the left turn. Section 32-371(2) provides that:

> The approach for a left turn shall be made in that portion of the right half of the roadway nearest the centerline of the road. After entering the intersection, the left turn shall be made so as to leave the intersection to the right of the centerline of the roadway being entered.

In this case, Officer Weaver's testimony establishes that Mace violated this section. Instead of leaving the intersection to the right of the centerline of the roadway being entered, Mace's vehicle crossed over the centerline into the oncoming lane of traffic. Thus, the evidence was substantial and supported the conviction for violating the city ordinance.

*Expert witness*

■ Next, Mace argues that the circuit court erred in qualifying Officer Moreno as a drug-recognition expert. Arkansas Rule of Evidence 702 governs the testimony of experts:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Whether a witness qualifies as an expert is a matter within the trial court's discretion, and we will not reverse the trial court's decision absent an abuse of that discretion. *Dillon v. State*, 317 Ark. 384, 877 S.W.2d 915 (1994). If some reasonable basis exists from which it can be said the witness has knowledge of the subject beyond that of ordinary knowledge, the evidence is admissible as expert testimony. *Id.*

Officer Moreno testified that he had attended a drug-recognition-expert school from August through December of 1995, as well as six field sobriety training schools. Having been previously recognized by the circuit court as a drug-recognition expert, Officer Moreno testified that he had recently been trained as a drug-recognition instructor. The circuit court determined that Officer Moreno possessed specialized knowledge that would assist in determining a fact in issue — whether Mace was intoxicated.

Prior to Officer Moreno's qualification as an expert, Mace conducted a voir dire examination of his qualifications. Officer Moreno testified that he was trained to determine which of the seven categories of drugs under which a person may be influenced. These categories included central nervous system depressants, central nervous system stimulants, narcotic analgesics, PCP, inhalants, and cannabis. Mace questioned Officer Moreno regarding the effects of caffeine and Benadryl. At the conclusion of voir dire, Mace complained that Moreno "could not explain what reactions are caused by what intoxicants."

■ The circuit court specifically stated that it was qualifying Officer Moreno as an expert for a narrow purpose — whether Mace was impaired because of some kind of intoxicant. We agree that Officer Moreno's specialized training and knowledge aided the circuit court in determining this fact in issue. In sum, Mace has failed to demonstrate the circuit court abused its discretion in qualifying Officer Moreno as a drug-recognition expert.

*Refusal to submit*

In its cross-appeal, the State contends that the trial judge erred in granting Mace's motion to dismiss the charge of refusing to submit to a chemical test. At the time of Mace's arrest, the applicable statutes containing Arkansas's implied-consent and refusal-to-submit laws were as follows:

> (a) Any person who operates a motor vehicle or is in actual physical control of a motor vehicle in this state shall be deemed to have given consent, subject to the provisions of § 5-65-203, to a chemical test or tests of his or her blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his or her blood if:
>
> . . . .
>
> (3) At the time the person is arrested for driving while intoxicated, the law enforcement officer has reasonable cause to believe that the person, while operating or in actual physical control of a motor vehicle, is intoxicated or has one-tenth of one percent (0.10%) or more of alcohol in his or her blood.

Ark. Code Ann. § 5-65-202 (Repl. 1993) (emphasis added).

> The chemical test or tests shall be administered at the direction of a law enforcement officer having reasonable cause to believe the person to have been operating or in actual physical control of a motor vehicle while intoxicated or while there was one-tenth of one percent (0.10%) or more of alcohol in the person's blood.
>
> . . . .
>
> If any person shall object to the taking of his blood for a test, as authorized herein, the breath or urine of the person may be used to make the analysis.

Ark. Code Ann. § 5-65-203(a) and (b)(2) (Repl. 1993).

> If the judge determines that the law enforcement officer had reasonable cause to believe the arrested person had been driving while intoxicated or while there was one-tenth of one percent (0.10%) or more of alcohol in the person's blood, and the person refused to submit to the test upon the request of the law enforcement officer, the judge shall order the Office of Driver Services to . . . [suspend or revoke the operator's license].

Ark. Code Ann. § 5-65-205(c) (Repl. 1993) (emphasis5-65-205(c)] added).[1]

After Mace was arrested, he consented to a breathalyzer test, which revealed no alcohol in his bloodstream. Thereafter, Officer Weaver attempted to administer a blood test in order to try to detect what he believed to be the presence of a controlled substance in Mace's bloodstream. Because Mace refused to submit to a blood test, Officer Moreno charged him with violation of the implied-consent law. The State asserts that Mace's refusal to take a blood test constituted substantial evidence of a violation of the implied-consent law. Mace contends that Officer Moreno should have requested that he submit to a urine test, and that, under § 5-65-203(b)(2), he could properly refuse to take a blood test without penalty. The Court of Appeals certified this case for us to determine whether a law enforcement officer must first request an operator who refuses a blood test to submit to an alternative test before the operator may be found guilty for refusing to submit to a chemical test. See Ark. Sup. Ct. R. 1-2(a)(17)(vi) and (d).

█ We need not decide this question because we conclude, after reviewing the testimony, that Officer Moreno offered Mace both a blood and urine test. While the officer selected a blood test, he gave Mace the option of taking a urine test. According to Officer Moreno's testimony, which Mace did not contradict, Mace refused any further testing after submitting to the breathalyzer test. The following passage is instructive:

> COUNSEL FOR MACE: And he refused to consent to the drawing of the blood?
> OFFICER MORENO: Yes.
> COUNSEL FOR MACE: At that point you charged him with refusing the test?
> OFFICER MORENO: Correct.
> COUNSEL FOR MACE: You didn't ask him for a urine test?

---

[1] Recently, in *Medlock v. State*, 328 Ark. 229, 942 S.W.2d 861 (1997), we held that, to the extent that § 5-65-205(c) prevents a defendant from having a jury determine whether he or she is guilty of refusing to submit to a chemical test, the statutory provision unconstitutionally infringes upon the right to jury trial under the Arkansas Constitution. Because this issue was not raised in this case, we do not address it.

OFFICER MORENO: No, sir. *I gave him an option of taking (a) urine test. But he refused.*
COUNSEL FOR MACE: As an independent test?
OFFICER MORENO: That's correct.
COUNSEL FOR MACE: He didn't want the independent test?
OFFICER MORENO: No. *He didn't want any test.*
COUNSEL FOR MACE: But the only test you asked him to take that he refused was drawing the blood?
OFFICER MORENO: That's correct.
COUNSEL FOR MACE: That is the only basis for you charging him with refusing the test?
OFFICER MORENO: That's correct.

(Emphasis added). While it is true that Officer Moreno requested that Mace take a blood test, it is clear to us that he also gave Mace the option of submitting to a urine test. Under these circumstances, we must conclude that the State's proof constituted sufficient evidence of a refusal-to-submit violation. Due to the circuit court's dismissal of the refusal-to-submit charge in Mace's favor, his double-jeopardy rights prevent a retrial for this offense. See *State v. Johnson, supra; State v. Long,* 311 Ark. 248, 844 S.W.2d 302 (1992). Thus, we can only declare error.

Affirmed on direct appeal; error declared on cross appeal.