Larry James OSBORN *v.* STATE of Arkansas

CR 99-584                                               11 S.W.3d 528

Supreme Court of Arkansas
Opinion delivered February 24, 2000

*Robert N. Jeffrey*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. Appellant Larry James Osborn argues as his sole point on appeal that he was denied a speedy trial under Ark. R. Crim. P. 28.1, and, as a result, the charge against him should have been dismissed. We disagree and affirm his conviction for aggravated robbery and his sentence of life imprisonment as a habitual offender.

At approximately 4:50 a.m. on the morning of May 18, 1996, Herschel Wright was loading his pickup truck in the parking lot of the Ramada Inn in Benton. His wife, Diane Wright, was in the motel room, and his grandson, Nathan, who was age seven, was with him. A car pulled into the parking lot, and the passenger, whom Wright later identified as Osborn, asked for directions. Wright got out of his pickup truck and walked over to the passenger side of the car, where Osborn asked specifically for directions to the interstate highway. Osborn then leaned over in his seat and raised up with a pistol pointed at Wright. Osborn demanded Wright's money, and Wright gave him his wallet. The driver of the car, who was identified later as Cory Jones, said: "Give him all your money or he'll blow you away." Wright replied that Osborn had all his money. The car sped away. It was pursued by police officers and crashed in a single-vehicle accident. Osborn was arrested that same day and charged with aggravated robbery.

On March 24, 1998, Osborn moved for a dismissal of the charge against him based on a speedy-trial violation. The trial court denied the motion. On April 28, 1998, Osborn petitioned this court for a writ of prohibition, also based on speedy-trial grounds. On May 15, 1998, we denied the petition without prejudice to raise the same issue on appeal.

Osborn was tried by a jury on June 4, 1998, and convicted and sentenced as previously stated. Following entry of the judgment, Osborn moved for a new trial based on the fact that three jurors had been misled by the prosecutor's closing argument regarding Osborn's criminal record. The trial court heard testimony on this point. The court set aside the sentence and granted Osborn a new sentencing trial. The State appealed the grant of a new trial, and this court reversed and ordered that the original sentence be rein-

stated. *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999).[1]

The essence of Osborn's point on appeal is that he was tried 747 days after his arrest. This exceeded the twelve-month requirement by 382 days. Of those days, he concedes that 218 days were due to his requests for continuances and 64 days were caused by his objection to the trial date set for April 20, 1998. This leaves 100 days over the twelve-month limit. At issue in this appeal are 118 days that accrued between the dates of December 4, 1997, and April 1, 1998. If the full 118 days were properly excluded by the trial court, there was no speedy-trial violation.

After Osborn was granted the continuances, his trial was set for October 17, 1997. He failed to appear for trial on that date and was later arrested in the state of Colorado and returned to Benton on December 4, 1997. Osborn now contends that his trial should have been set within 18 days after his return from Colorado to comply with speedy-trial requirements. He further contends that if the trial delay was due to congestion of the trial docket, no written order or docket notation was made on December 4, 1997, to show that the congestion was due to exceptional circumstances, as required by Ark. R. Crim. P. 28.3(b).[2] Also, he maintains that the excluded period caused by congestion was required to be set out in a court order or docket entry. *See* Ark. R. Crim. P. 28.3(i).[3] In support of his argument, Osborn directs our attention to *Hicks v. State*, 305 Ark. 393, 808 S.W.2d 348 (1991). In *Hicks*, we held that congestion alone did not constitute exceptional circumstances to justify breaching the speedy-trial rule. *See id.* at 397, 808 S.W.2d at 351.

We do not consider *Hicks v. State, supra*, to be precedent for deciding the instant case. Osborn's trial was set for October 17, 1997, and he failed to appear. The duration of a defendant's unavailability is clearly an excludable period for speedy-trial purposes. *See* Ark. R. Crim. P. 28.3(e). Moreover, once he was

---

[1] The State does not raise the issue of whether Osborn waived his speedy-trial appeal by not cross-appealing on that point in the State's appeal. Accordingly, we will not consider the issue.

[2] Rule 28.3(b) was amended by per curiam order on April 22, 1999, to eliminate the "exceptional circumstances" language. *See In Re Ark. R. Crim. P. 28*, 337 Ark. 627 (1999).

[3] The same per curiam order cited in footnote 2 amended Rule 28.3(i) to permit the trial court to enter the court order or make the docket entry after the speedy-trial motion has been filed.

arrested and returned to Arkansas, he was not entitled to a trial within 18 days, as he now argues. That would have had the effect of disrupting the trial court's entire docket. What the trial court did, upon Osborn's arrest and return to this state, was to set the trial down for the next available trial date. Osborn was entitled to nothing more under our rules. We affirm the trial court's denial of the motion to dismiss.

Osborn also takes issue with the absence of a contemporaneous written order or docket entry at the time the "continuance" was granted on December 4, 1997, after he was returned from Colorado. We do not view the trial court's resetting of a trial date under these circumstances as a traditional continuance. It is clear from the record that Osborn failed to appear for trial on October 17, 1997. It is further clear from the record that Osborn's trial was rescheduled for the first available trial date, after his return to Arkansas.

██ ██ We have held that failure to make a docket entry or written order relating to excludable periods does not warrant an automatic reversal under Rule 28.3(i). *See Wallace v. State*, 314 Ark. 247, 862 S.W.2d 235 (1993); *Hubbard v. State*, 306 Ark. 153, 812 S.W.2d 107 (1991); *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990); *see also Henson v. State*, 38 Ark. App. 155, 832 S.W.2d 269 (1992). We have further held that when a case is delayed by the accused and the delaying act is memorialized by a record taken at the time it occurred, that record may be sufficient to satisfy the requirements of Rule 28.3(i). *See Wallace v. State, supra; Hubbard v. State, supra; McConaughy v. State, supra; Key v. State*, 300 Ark. 66, 776 S.W.2d 820 (1989).

██ That is exactly what transpired in the case before us. The record shows that Osborn delayed this case by not showing up for trial on October 17, 1997. It further shows that the trial court reset the case for the next available trial date. Under these circumstances, where the record clearly reveals what occurred, strict compliance with Rule 28.3(i) is not required.

The record in this case has been reviewed for other error in compliance with Ark. Sup. Ct. R. 4-3(h), and no reversible error has been found.

Affirmed.

GLAZE, J.,concurs.

TOM GLAZE, Justice, concurring. Appellant, Larry Osborn, should have raised his speedy-trial claim on cross-appeal in *State v. Osborn*, 337 Ark. 172, 988 S.W.2d 485 (1999) (Osborn I). Prior to trial in *Osborn I*, appellant filed a petition for writ of prohibition with our court on speedy-trial grounds, but we denied the petition without prejudice to raise the issue on appeal. Osborn's case then went to trial, and he was convicted of aggravated robbery and given a life sentence. However, upon Osborn's motion, the trial court awarded him a new sentencing trial, from which the State appealed, as authorized under Ark. R. App. P.—Crim. 3(c). Osborn filed no cross appeal raising his earlier speedy-trial claim. For reasons fully stated in *Osborn I*, we reversed and remanded this cause and directed the trial judge to reinstate Osborn's life sentence. That would seem to have been the end of Osborn's case, but instead he was permitted after reinstatement of his conviction and sentence to raise once again his speedy trial issue which has led to this second appeal.

Our criminal rules do not specifically address this situation, and while my research fails to reveal a case where a defendant appellee has cross appealed when the State had appealed, there are numerous cases where the State as appellee has filed cross appeals. *See e.g. Mace v. State*, 328 Ark. 536, 944 S.W.2d 830 (1997); *Moore v. State*, 321 Ark. 249, 258-61, 903 S.W.2d 1544, 158-60 (1995); *Ashe v. State*, 57 Ark. App. 99, 942 S.W.2d 267 (1997). While our Rules of Appellate Procedure—Criminal do not specifically mention cross appeal, as such, our Rules of Appellate Procedure—Civil clearly do (*see* Ark. R. App. P.—Civ. 3(d)), and these civil appellate rules have commonly been referred to and applied when necessary in criminal appeals.

In sum, our procedural and appellate rules do not specifically provide that a defendant, who is denied a writ of prohibition on speedy-trial must raise the issue on cross appeal. Nonetheless, this court denied Osborn's petition without prejudice to raise the issue on appeal, and an appeal procedurally includes a cross appeal. *Cf. Flemings v. Little*, 324 Ark. 112, 918 S.W.2d 718 (1996). To allow Osborn to bring an appeal after his case was finally concluded in *Osborn I* merely encourages piecemeal appeals — a practice this court has repeatedly and steadfastly opposed.