David Shayne HENDERSON *v.* STATE of Arkansas

CR 92-167                                      835 S.W.2d 865

Supreme Court of Arkansas
Opinion delivered July 13, 1992

*C. Scott Clark*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Senior Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This appeal comes from a conviction for rape and a life sentence as a habitual offender meted out by the circuit court after the jury deadlocked during the penalty phase. The appellant, David Shayne Henderson, appeals on the basis that 1) the circuit court denied him a continuance when two key witnesses — his father and brother-in-law — were not available for trial, and 2) the court improperly sentenced him when the jury deadlocked. Neither argument merits a reversal, and we affirm the conviction and sentence.

The facts as related at trial by Henderson and the victim at trial are irreconcilable. The victim, a resident of North Little Rock, testified that she went to the Nightlife Club in Little Rock on Asher Avenue at 1:00 or 1:30 a.m. on October 28, 1990. She visited with friends and the doorman and had at least two alcoholic drinks over the next few hours. The victim saw Henderson at the club whom she had known in the past as a neighbor in a trailer park in Little Rock where she lived previously with a boyfriend. She talked with Henderson at the club, and when it came time for her to leave several hours later, he followed her outside and asked for a ride home to his residence near Geyer Springs. She obliged, but after they began the drive, he changed his mind and directed her to take him to a friend's house off of Colonel Glenn Road. En route, he asked her to stop so that he could go to the bathroom. After doing so, he got back in the car and tried to kiss and fondle her. The victim resisted, and he pulled her by the back of the hair and threatened her with a knife at her throat. He then demanded that she undress and perform oral sex

on him. She begged him to stop, and he hit her in the face several times with the back of his hand.

The victim complied with Henderson's demands, and while she was doing so, Henderson penetrated her vagina and anus with his fingers. He then pulled out a knife and forced the handle into her vagina, and when she refused to do it herself, he beat her in the face again and forced the knife handle into her anus. Henderson assumed the driver's seat, told the victim to get dressed, and drove the car to Hot Springs, where, according to the victim, they visited with one of his family members, either his mother or sister. She did not tell that person what had happened to her. They drove into a wooded area next, and Henderson forced her to have sex and penetrated her both vaginally and anally with his penis. She was bleeding at that point from her anus, and the appellant stopped the assault after blood got on his shirt.

Henderson next traveled to a McDonald's restaurant in Hot Springs to get food. At the drive-through, the victim tried to escape, but Henderson grabbed her and left the restaurant at a high rate of speed with the victim screaming. They drove into a surrounding wooded area and there Henderson forced her to have sex again. After this final episode, Henderson took the victim to his father's trailer, which was in the vicinity. He first talked to his father and then told the victim to come inside. After entering the trailer, she went to the bathroom and put on makeup to cover her facial bruises. She did not tell Henderson's father that she was in trouble or that she had been raped by his son.

The victim then went outside and met the appellant's brother-in-law, Billy Joe Harvey, and his sister, Sherri Dawn Harvey, who lived in a trailer behind Henderson's father. The victim and Sherri went to Sherri's trailer, and the victim washed herself while Sherri washed her jeans. At that time, the victim says she told Sherri about the rapes, though Sherri denied this at trial. Sherri gave her a knife to protect herself and said that she would call to make sure she got home safely. Henderson, meanwhile, washed the front seat of the victim's car which was stained with blood.

Henderson next took the car to Prescott and visited with his great uncle, Fred Ridling, Jr., for about ten minutes. Ridling testified at trial that he did not see anything unusual, and he

assumed the passenger in the car was female. No complaints were made to him by the passenger.

Henderson and the victim then drove back to Little Rock and arrived about 2:30 in the afternoon. The victim promised not to tell what had happened and went to her room at home and rested. When her mother came home, she told her what had happened, and they went to the hospital, where the bruises on her face and lips and chin were treated. The treating physician also found bruises around the vagina and non-motile sperm in the vagina and dried blood in the anus.

Henderson admitted only to consensual sex with the victim and to the traveling. He testified at trial that he had had sex with the victim five times previous to the night in question and that she consented to all sexual activity on that particular night. He said that they did fight after the sex and that is how she became bruised. He also said that they had taken drugs that night, including crystal methamphetamine, and that the victim on occasion had acted "crazy." He admitted to four prior felonies. His sister, Sherri, confirmed his rendition of the facts at trial.

Before trial commenced on October 1, 1991, Henderson's attorney advised the circuit court that Henderson's father and brother-in-law had been arrested in Kansas for marijuana possession and were not available for trial. He asked for a continuance, which the court denied on the basis that he had no assurances that the two men would be available for a later trial setting. It was brought out that the trial had already been continued once at Henderson's request due to an ill witness. During the trial, the circuit court told the appellant's attorney that it was permissible for him to advise the jury that Henderson's father was not available for trial. The attorney did not do so. The circuit court concluded, after hearing the victim's testimony, that there was nothing to indicate that the absent witnesses would contradict the victim since she admitted that she did not tell them that she had been raped and that she had tried to cover her bruises with makeup.

The jury found Henderson guilty of rape but did not assess a penalty. The jurors reconvened twice before the court, and the court advised them to do their best to reach a verdict. Ultimately, they were unable to decide on a penalty, and the court dismissed

them after being informed that the jury had been debating a sentence of between forty and sixty years.

On October 3, 1991, the circuit court held a sentencing hearing. Both the state's attorney and the defense attorney agreed that the court could sentence, although the defense attorney asked the court to adhere to the jury's range and assess punishment between forty and sixty years. The circuit court then sentenced Henderson to life imprisonment.

## I. CONTINUANCE

For his first point, Henderson challenges the court's ruling denying him a continuance because of the absence of his father and brother-in-law, who, he claimed, would be pivotal defense witnesses. Henderson did not provide an affidavit of materiality, but he did make the following proffer to the court at the conclusion of all testimony when he renewed his motion:

> Billy Joe Harvey is Sherri Harvey['s], who did testify, husband. Mr. Harvey could testify and would testify I think even from Ms. Harvey's testimony she hid or was deceptive about giving [the victim] this knife. Mr. Harvey would not have been, would not have known that. He would have testified about how [s]he appeared to him. How the conversation went on at the house how she appeared physically, both physically and emotionally at that house and what was going on at that house. Mr. Henderson would testify about the encounters that he had at his house. I know from talking with him that his testimony would be along the lines that he was in the room with [the victim] for a period of time where they were alone. They conversed. There was absolutely no mention of any rape. I agree [the victim] has not said that there was any conversations to that effect but I think having those people here would be much more beneficial than having those words being said by the alleged victim in this matter.

The circuit court then asked whether the two absent witnesses would have contradicted the state's witnesses and defense counsel answered: "I cannot off the top of my head recall that they would have contradicted the testimony of — specifically contradicted any point that [the victim] made."

■■ State law provides that an affidavit is required for a continuance based on the absence of witnesses. Ark. Code Ann. § 16-63-402(a) (1987). We have interpreted the affidavit requirement under the statute as necessary to justify any continuance caused by a missing witness. *Brooks* v. *State*, 308 Ark. 660, 827 S.W.2d 119 (1992). The denial of a continuance when the motion is not in substantial compliance with the statute is not an abuse of the trial court's discretion. *Butler* v. *State*, 303 Ark. 380, 797 S.W.2d 435 (1990). The burden is on the appellant to establish prejudice and an abuse of discretion in denying the continuance. *Gillie* v. *State*, 305 Ark. 296, 808 S.W.2d 320 (1991); *Ray* v. *State*, 304 Ark. 489, 803 S.W.2d 894 (1991); *Butler* v. *State*, *supra*. The factors for the trial court to consider in exercising its discretion over continuance motions are:

> (1) the diligence of the movant, (2) the probable effect of the testimony at trial, (3) the likelihood of procuring the attendance of the witness in the event of a postponement, and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true.

303 Ark. at 384-385, 797 S.W.2d at 438; *see also Ray* v. *State, supra*.

■ Henderson did not file an affidavit to support his motion and could offer no assurances that the two missing witnesses would attend a trial setting on a certain date in the future. Moreover, he could show no prejudice by their absence since their testimony would not have contradicted the victim's story but, instead, would have been largely cumulative to hers. It is also doubtful that the father and brother-in-law would have added anything of substance to the testimony of defense witnesses Sherri Harvey and Fred Ridling, Jr. who did appear at trial. The circuit court's ruling which denied the continuance was appropriate in this case.

## II. SENTENCING

Henderson asserts that the circuit court improperly sentenced him when it exceeded the jury's range of forty to sixty years and gave him life imprisonment. We do not agree.

Statutory law is controlling on this point:

(b) . . . the court shall fix punishment as authorized by this chapter in any case where:

. . . .

(3) The jury fails to agree on punishment . . . .

Ark. Code Ann. § 5-4-103(b)(3) (1987).

In this case, the jury was clearly deadlocked on punishment. The jurors had first been out for over two hours in deliberations, and they sent the circuit court a note asking what would happen if they could not agree on the punishment. The court called them in and told them that it would stay as long as necessary and that it understood they were "willing to talk about it a little more." Some forty minutes later the court received another note from the jurors stating that they were unable to agree on a sentence. At that point, the court dismissed them.

At sentencing thirty days later, the lawyers for the state and defense agreed that the circuit court could make the sentencing decision, although defense counsel asked that the court sentence within what the jury was considering which was the forty-to-sixty-year range. The court refused and sentenced Henderson to life.

We hold that there was no error in the circuit court's decision. Henderson was convicted of rape, a class Y felony, and with a record of four prior felonies, the range of his punishment was forty years to life imprisonment. Ark. Code Ann. §§ 5-4-501(b)(1), 5-14-103 (1987).

We considered a similar fact situation in *Scherrer* v. *State*, 274 Ark. 227, 742 S.W.2d 877 (1988). In *Scherrer*, prior to the sentence phase, the circuit court instructed the jury that the sentence could be in the ten-year to forty-year range or life. The jury came back and asked if it should pick a number between ten and forty years. The court answered that it could pick a number within that range or give life imprisonment. The jury was then unable to agree, and the court assessed life imprisonment. Scherrer argued that this was improper because it exceeded ten to forty years which the jury had been considering, but we upheld the sentence.

■ Similarly, we uphold the circuit court's sentence in this

case. Henderson's counsel agreed to the assessment of punishment by the circuit court, and the punishment then given was within the statutory range. We find nothing in § 5-4-103 that limits the circuit court's discretion to what the jury was considering before the court assumed control of the matter. The sentence given, therefore, was not an abuse of the circuit court's discretion.

The objections in this case have been abstracted, and the record has been examined in accordance with Ark. Sup. Ct. R. 11(f). It has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.