Corelanius PHILLIPS *v.* STATE of Arkansas

CR 93-642                                           863 S.W.2d 309

Supreme Court of Arkansas
Opinion delivered October 25, 1993

*Robert P. Remet*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Corelanius Phillips, appeals his capital murder conviction and sentence to life imprisonment without the possibility of parole. His argument on appeal concerns essentially one issue: whether he established his affirmative defense of insanity based on an intermittent explosive disorder so as to render the State's evidence of capital murder insubstantial and so as to warrant a directed verdict of acquittal. We affirm the conviction and judgment.

During the morning of October 13, 1991, the appellant went to the home of Christine Rainey in Warren where Angela Durden, his former girlfriend and the mother of his son, was living. When Angela Durden came to the door, the appellant pulled her outside and to the road and began beating and kicking her. Ms. Rainey and her son observed the assault and called the emergency telephone number, 911. By the time the Warren police officers arrived, Angela Durden was dying from multiple injuries to the head and abdomen. The appellant was arrested on the scene after attempting to escape. He was charged with capital murder, and the death penalty was waived at the beginning of the trial.

At trial, Warren Police Officer Lane Smith testified that he and Officer Tommy Reed were called to Butler Street the morning of the crime. They found Angela Durden lying in a pool of blood and severely beaten. Smith stated that the appellant ran from the scene when the two officers arrived. He added that

Phillips was difficult to get into the car and that he told them to shoot him because he was going to kill himself. Officer Smith further testified that the appellant told them that he caught Angela Durden "messing around on him" and he took care of "the problem." The officer then related that he went with Ms. Durden to the hospital and that she died there shortly after she arrived.

Officer Reed testified that the appellant was very uncooperative and seemed like he did not care. The appellant explained his actions to the police officer by saying that he had been wronged by Ms. Durden and "something just went off" and "that he clicked." The officer added that the appellant also stated that, "it's going to be all right. . . . I'm going to plead temporary insanity. . . . I'll get off."

Mr. Leander McEntire testified that he lives near Ms. Rainey and that he observed the appellant's attack on Ms. Durden. He stated that he saw the appellant drag her from the house and pull her towards the road. Mr. McEntire added that the victim broke free and the appellant caught her and dragged her back to the road. He testified that the appellant began to beat Ms. Durden. He knocked her down, and then stamped her face and stomach. The witness added that he heard the appellant tell the victim that he was going to kill her. He tried to stop the appellant but went back to his house because he thought the appellant had a gun.

Christine Rainey testified that Ms. Durden and her daughter were friends. The victim was living with her on October 13, 1991. She said that at about 5:30 a.m. the appellant knocked on her door and asked to see the victim. When Ms. Durden finally went to the door, the appellant grabbed her and carried her out to the road. Ms. Rainey testified that the appellant started hitting Ms. Durden. She said that while he was assaulting her, the appellant reached into Ms. Durden's bra and took out her money. She testified that the appellant knocked Ms. Durden down and then jumped on her and beat her in the face. She added that the appellant called the victim pejorative names while he beat her.

Monica Domineck testified that she was six months pregnant with the appellant's child in October of 1991. She said that she saw Phillips at about 3:00 a.m. at the Warren Social Club and

that the appellant walked her home at about 6:00 a.m. She testified that the appellant smelled like he had been drinking alcoholic beverages.

Dr. W.R. Oglesby, a psychiatrist with Delta Counseling Associates, a community mental health center, testified for the defense. He had evaluated Phillips's mental competency pursuant to court order. Dr. Oglesby's diagnosis was: (1) intermittent explosive disorder; and, (2) alcohol abuse. His report stated that in his opinion the appellant:

> has no impairment of his capacity to appreciate the criminality of his conduct. However, because of a mental disorder (Intermittent Explosive Disorder) I believe there was *some* impairment of his ability to conform his conduct to the requirements of the law at the time of the alleged criminal conduct. The exact degree of impairment would be difficult to estimate from a clinical standpoint.

At trial, Dr. Oglesby testified that he could not say to what degree the disorder affected the appellant's ability to control his behavior. Dr. Oglesby admitted that the appellant was not psychotic. He said that the disorder may have affected the appellant's behavior as much as 100% or as little as 25%. Phillips told him that he had gone over to see Ms. Durden to talk about seeing their son. Ms. Durden began to argue with him and matters escalated. He then just blanked out and did not remember what happened. Dr. Oglesby testified that the appellant was not dangerous unless he was provoked.

There was also testimony at trial that Phillips's blood alcohol content was .11 per cent on the day of the crime and that he tested positive for marijuana usage within two to three weeks before his arrest. The Associate Medical Examiner, Dr. David DeJong, testified that cause of death was due to blunt trauma to the head and abdomen. The jury found the appellant guilty of capital murder and sentenced him to life imprisonment without possibility of parole.

## I. AFFIRMATIVE DEFENSE OF INSANITY

The appellant's first claim of error is that the verdict is against the weight of the evidence. This court, however, does not weigh the evidence on appeal. *Gruzen v. State*, 267 Ark. 380, 591

S.W.2d 342 (1979). Our standard of review when sufficiency of the evidence is the issue is whether there was substantial evidence to support the verdict. *Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1992); *Johnson* v. *State*, 306 Ark. 399, 814 S.W.2d 908 (1991). Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or another without resorting to speculation or conjecture. *Hodge* v. *State*, 303 Ark. 375, 797 S.W.2d 432 (1990). This court will affirm a judgment if there is any substantial evidence to support the verdict. *Davasher* v. *State*, 308 Ark. 154, 823 S.W.2d 863 (1992); *Traylor* v. *State*, 304 Ark. 174, 801 S.W.2d 267 (1990).

■ The appellant raised the affirmative defense of insanity which is set out by statute:

> (a) It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged, he lacked capacity, as a result of mental illness or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct.

Ark. Code Ann. § 5-2-312(a) (1987). The State bears the burden of proving a defendant guilty beyond a reasonable doubt. However, the defendant has the burden of establishing the affirmative defense of insanity by a preponderance of the evidence. *Davasher* v. *State, supra*; *Robertson* v. *State*, 304 Ark. 332, 802 S.W.2d 920 (1991); *Campbell* v. *State*, 265 Ark. 77, 576 S.W.2d 938 (1979).

The following evidence supports the conclusion that the appellant could conform his conduct to the requirements of law and appreciate the criminality of his actions. First, Dr. Oglesby testified that the appellant was not suffering from a psychosis, and his diagnosis was that the appellant was suffering both from intermittent explosive disorder and alcohol abuse. Dr. Oglesby testified that although he was of the opinion that the appellant was suffering from some type of impairment at the time of the offense, he was not able to say to what degree the appellant's ability to conform his conduct was affected. Dr. Oglesby admitted that intermittent explosive disorder is not a widely accepted disorder and is thought by some to be a personality disorder.

Warren Police Officers Lane and Reed testified that when they arrived at the crime scene, the appellant fled and tried to hide in a vacant lot. Officer Reed also provided a motive for the murder — the appellant told him that he attacked the victim because he believed she was involved with another man. Further, the appellant told Officer Reed that "it's going to be all right. . . . I'm going to plead temporary insanity. . . . I'll get off." All of this testimony is evidence of calculation and even premeditation on the part of Phillips and exhibits an awareness of the legal and moral consequences of his actions.

██ It is for the jury to decide whether a defendant has sustained the burden of proving insanity by a preponderance of the evidence. The jury is the sole judge of the credibility of witnesses, including experts, and has the duty to resolve conflicting testimony regarding mental competence. *Fitzhugh* v. *State*, 293 Ark. 315, 737 S.W.2d 638 (1987). Here, evidence regarding insanity, both pro and con, including the ability of the appellant to conform his conduct, was submitted to the jury, and it was then instructed on the law. The jury rejected the insanity defense and entered a verdict of guilty. There was clearly substantial evidence to support this verdict.

## II. DIRECTED VERDICT OF ACQUITTAL

The appellant's second claim of error is akin to the first. He argues that the trial court erred in failing to direct a verdict of acquittal on grounds of temporary insanity. We disagree.

█ The law provides that a trial judge *may* enter a judgment of acquittal in the event the defendant clearly establishes that he was suffering from a mental disease or defect at the time of the offense which rendered him unable to conform to the requirements of the law or to appreciate the criminality of his conduct. Ark. Code Ann. § 5-2-313 (Supp. 1993). We have stated, when construing a predecessor statute to § 5-2-313, that "the statute permits the trial judge to acquit the defendant in cases of extreme mental disease or defect where the lack of responsibility on the part of the defendant is clear." *Franks* v. *State*, 306 Ark. 75, 78, 811 S.W.2d 301, 303 (1991). The decision of whether to direct a verdict of acquittal is discretionary with the trial court under § 5-2-313. *See also Davasher* v. *State, supra.* Moreover, a directed verdict of acquittal is properly denied where

there are questions of fact remaining concerning the defendant's affirmative defense of insanity. *Brown & Behis* v. *State*, 259 Ark. 464, 534 S.W.2d 207 (1976).

■ The trial court did not abuse its discretion in refusing to direct a verdict of acquittal.

The record in this case has been reviewed in accordance with Ark. Sup. Ct. R. 4-3(h) for any additional prejudicial error, and none has been found.

Affirmed.