Larry Paul MORGAN *v*. STATE of Arkansas

CR 97-943                                         971 S.W.2d 219

Supreme Court of Arkansas
Opinion delivered May 21, 1998
[Petition for rehearing denied June 25, 1998.]

*Johnson & Richards, P.L.L.C.*, by: *B. Kenneth Johnson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly S. Terry*, Asst. Att'y Gen., for appellee.

W.H. "Dub" Arnold, Chief Justice. Appellant, Larry Paul Morgan, raises five separate points on appeal relating to his conviction of first-degree murder. Specifically, Morgan argues that (1) the trial court erred by denying his motion to dismiss pursuant to Ark. R. Crim. P. 28 (1997); (2) the trial court abused its discretion by denying his motion for a continuance; (3) the trial court erred by denying his motion for dismissal or a directed verdict; (4) the trial court abused its discretion by denying his motion for order of acquittal; and (5) the trial court erred by excluding evidence admissible under Ark. R. Evid. 401 (1997). Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 1-2(a)(2) (1997) as the record in this appeal was lodged before September 1, 1997, the effective date of our appellate jurisdiction rule change. Finding no error, we affirm the trial court on all points.

On January 23, 1997, Morgan was convicted of first-degree murder and sentenced to forty years' imprisonment in the Arkansas Department of Corrections. As early as June of 1994, Dr. Warren Douglas, a Little Rock psychiatrist, treated Morgan for mental problems. Dr. Douglas initially diagnosed Morgan with an adjustment disorder with depressed mood or possibly circumscribed paranoia and treated Morgan with medication and counseling. On February 14, 1995, Dr. Douglas changed his diagnosis to delusional paranoid disorder, and on March 8, 1995, two days before the murder, he urged Morgan to voluntarily admit himself to the hospital for treatment. Morgan refused.

Morgan described his delusions of persecution, including his belief in conspiracies by his employer, Dr. Douglas, and his family, to assassinate him. He also explained that these delusions prevented him from sleeping, eating, or going upstairs in his home, where he heard people coming out of his attic. Additionally, Morgan claimed that his own family feared him and refused to permit him to stay with them. For example, on March 9, 1995, Morgan contacted his son and asked to be picked up and taken to a safe place. The two rode around for approximately eight and one-half hours before Morgan was returned to his home. On March 10, 1995, Morgan killed his wife, Linda Morgan, by stabbing her approximately twenty-five times with a knife. In his

defense, Morgan claimed that he was suffering from a paranoid delusional disorder and that he was not responsible for his actions.

## I. Speedy Trial

On January 21, 1997, Morgan filed a motion to dismiss the case against him, arguing that the state had violated the provisions of Ark. R. Crim. P. 28.1(c) and 28.2(a) (1997), which require the State to try Morgan within twelve months of the date of his arrest, March 10, 1995, excluding any periods of delay authorized by Ark. R. Crim. P. 28.3 (1997). After hearing oral arguments on the issue of excluded periods, the trial court determined that three periods of time were excludable since Morgan's arrest and denied the motion to dismiss. Morgan's trial began on January 21, 1997, 318 days after the speedy-trial date expired. Therefore, the State has the burden of showing that the delay was the result of Morgan's conduct or was otherwise justified. *See Wallace v. State,* 314 Ark. 247, 254, 862 S.W.2d 235 (1993). In this case, the State met its burden and demonstrated that at least 330 days were properly excludable.

■ Ark. R. Crim. P. 28.3(a) excludes from the speedy-trial calculation the delay period resulting from an examination and hearing on a defendant's competency. Rule 28.3(a) also excludes the period during which a defendant is incompetent to stand trial. Here, the trial court found two excludable periods related to Morgan's competency. First, the court excluded the period between March 17, 1995, and June 14, 1995, for a total of eighty-nine days. March 17, 1995, represents the day the court entered an order for Morgan's mental evaluation, and June 14, 1995, represents the day the results of that examination were filed with the court. The period of time from the date an exam is ordered to the report's file date is properly excludable for speedy-trial purposes. *See Brawley v. State,* 306 Ark. 609, 612-13, 816 S.W.2d 598 (1991). Accordingly, the trial court correctly excluded this eighty-nine-day period.

■ The second period excluded by the trial court began October 30, 1995, and ended May 16, 1996, totaling 199 days. On October 30, 1995, Morgan requested a transfer to the Arkan-

sas State Hospital, citing his deteriorating mental condition and need for treatment and evaluation. On November 7, 1995, the trial court entered an order granting commitment to the State Hospital for Morgan to be evaluated. After the State Hospital informed the trial court, on January 10, 1996, that Morgan was not fit to proceed to trial, the trial court entered an order committing Morgan to the hospital until his competency to proceed was restored. The State Hospital noted in a report dated May 16, 1996, that Morgan was fit to proceed to trial. Since Rule 28.3(a) excludes the period during which a defendant is incompetent to stand trial, the trial court properly excluded this 199-day period. Significantly, even the delay resulting from a defendant's request for a second mental evaluation is chargeable to the defendant. *See Mack v. State*, 321 Ark. 547, 550-51, 905 S.W.2d 842 (1995).

The third period excluded by the trial court resulted from Morgan's request for a continuance. Morgan filed a motion seeking a continuance based on the unavailability of a witness. Although the trial had been set for December 10, 1996, the trial court granted the continuance and reset the trial for January 21, 1997, charging the forty-two-day delay to Morgan. Ark. R. Crim. P. 28.3(c) permits the exclusion of the delay period resulting from a continuance granted at a defendant's request. *See also Smith v. State*, 313 Ark. 93, 852 S.W.2d 109 (1993). Accordingly, the trial court did not err by excluding this forty-two-day period. The three excluded periods total 330 days, and the State was required to evidence only 318 excludable days. Accordingly, Morgan's right to a speedy trial was not violated, and the trial court did not err by denying his motion to dismiss.

## II. Motion for Continuance

Prior to trial, Morgan's expert witness, Dr. Travis Tunnell, a Little Rock psychologist, underwent heart surgery and notified Morgan that he would be unable to testify at trial on January 21, 1997. On January 20, 1997, Morgan filed a motion for a continuance, including Dr. Tunnell's expected testimony and documentation indicating that he would be unable to testify for approximately two months. The trial court denied Morgan's

motion for continuance, finding that Dr. Tunnell's testimony would be cumulative and that it was not indispensable.

■ Pursuant to Ark. R. Crim. P. 27.3, the trial court must grant a continuance upon a showing of good cause and only for as long as necessary, taking into account the request or consent of the prosecuting attorney or defense counsel and also the public interest in promptly disposing of the case. Further, a trial court should consider the following factors in making its determination whether to grant a continuance: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the witness's attendance if the trial is postponed; and (4) the filing of an affidavit stating what facts the witness would prove and that the appellant believes them to be true. See *Turner v. State*, 326 Ark. 115, 119, 931 S.W.2d 86 (1996).

Here, Morgan moved for the continuance one day prior to trial, and the effect of Dr. Tunnell's testimony would have been cumulative. Subsequent to Morgan's arrest on March 10, 1995, he was observed, tested, and evaluated by Dr. Walter Randolph Oglesby of Delta Counseling and Guidance; Dr. Susan Doi, an Arkansas State Hospital forensic psychologist; Dr. Oliver Hall, an Arkansas State Hospital psychiatrist; and Dr. James Dilday, an Arkansas State Hospital treating psychiatrist. Additionally, Morgan was tested and evaluated by Dr. Tunnell. All of the mental health experts agreed in their opinions that Morgan lacked the requisite mental intent to commit the charged offense. Dr. Tunnell agreed with those opinions.

■ In *Henderson v. State*, 310 Ark. 287, 292, 835 S.W.2d 865 (1992), this court upheld the denial of a motion for continuance where the witness's testimony, if present, would have been cumulative. Morgan asserts that the ultimate issue at trial was his culpability and that Dr. Tunnell administered three unique psychological tests: the Rorschach test, the MMPI, and the Myers-Briggs test. However, Dr. Doi of the Arkansas State Hospital testified regarding the results of an MMPI test that Roger LeFleur of Delta Counseling had performed on Morgan. Dr. Doi also confirmed that the Myers-Briggs test is used for vocational purposes and would have no relevance to a forensic evaluation. Arguably,

the only unique test administered by Dr. Tunnell was the Rorschach test. In any event, Dr. Tunnell's expected testimony confirmed that of the three psychiatrists and one forensic psychologist who did testify at trial. Accordingly, the trial court did not abuse its discretion in finding that the testimony would be cumulative and in denying Morgan's motion for a continuance.

### III. Motion for Dismissal or Directed Verdict

■ At the close of the State's case and at the close of all evidence, Morgan moved for a directed verdict, arguing that the State failed to offer sufficient evidence to prove the requisite mental state for the charged offense. The trial court denied both motions for directed verdict, and the case went to the jury. Morgan contends that the trial court erred by denying his motion for a dismissal or directed verdict based on his affirmative defense that he was not guilty by reason of mental disease or defect. Morgan bears the burden of establishing his affirmative defense of insanity by a preponderance of the evidence. *See Phillips v. State*, 314 Ark. 531, 535, 863 S.W.2d 309 (1993). On appeal, our standard of review of a jury verdict rejecting the insanity defense is whether there was any substantial evidence to support the verdict. *See Davasher v. State*, 308 Ark. 154, 169, 823 S.W.2d 863 (1992), *cert. denied*, 504 U.S. 976. Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture. *Phillips*, 314 Ark. at 535. Moreover, this court will affirm the jury's verdict if there is any substantial evidence to support the verdict. *See id.*

■ Morgan argues that no substantial evidence exists to support his verdict because all of the medical experts who testified at trial agreed that he was not responsible for his actions at the time of the murder and that he could not appreciate the criminality of his conduct. Most compellingly, Dr. Doi testified that objective psychological tests were unnecessary because "it was so clear that Mr. Morgan was psychotic at the time." However, a jury is not bound to accept as true the opinion testimony of any witness, including the opinion testimony of experts. The jury is not bound to find an expert's testimony conclusive nor is it bound

to believe that testimony any more than that of other witnesses. *See Burns v. State*, 323 Ark. 206, 210, 913 S.W.2d 789 (1996); *Davasher*, 308 Ark. at 170. Significantly, even where several experts agree in their opinions and no opposing evidence is offered, the jury is still bound to decide the issue upon its own fair judgment. *Davasher*, 308 Ark. at 170.

In *Davasher*, we upheld the trial court's denial of a motion for directed verdict on an affirmative defense, although the medical evidence was unrefuted that the defendant was not responsible for his actions at the time of the offense. *Davasher*, 308 Ark. 154. We also noted that "testimony by expert witnesses is to be considered by the jury in the same manner as other testimony and in light of other testimony and circumstances in the case." *Id.* at 170. The jury alone determines the weight to give evidence and may reject or accept all or any part of it; the jury is the sole arbiter of whether or not a defendant has sustained his burden of proving the insanity defense by a preponderance of the evidence. *Phillips*, 314 Ark. at 536. Although not argued in his brief, Morgan urges us to overrule the precedent of *Davasher*. However, this court does not consider arguments without authority or convincing argument where it is not apparent without further research that the argument is well-taken. *Matthews v. State*, 327 Ark. 70, 938 S.W.2d 545 (1997).

In addition to the expert medical testimony, the State offered lay testimony that the jury could believe indicated that Morgan appreciated the criminality of his actions. First, the police dispatcher testified that Morgan called the police department and stated that he thought he had killed his wife. Second, on cross-examination, Dr. Doi remarked that Morgan's call to the police indicated that he knew he had done something wrong and that he knew the appropriate steps to take. Dr. Oglesby also acknowledged that Morgan was only sixty to seventy percent impaired in his ability to be culpable. Third, a videotape of Morgan's police interview permitted the jury to observe firsthand Morgan's demeanor in close proximity to the time of the offense. The video also exhibited Morgan's request for an attorney and his knowledge that he was facing a serious charge.

Fourth, Deputy Tommy Cox testified regarding the crime scene and indications that the crime may have been premeditated and deliberate. For example, Deputy Cox remarked that only one of the three telephones was hooked up in the house, and one of the disconnected phones appeared to have been moved from an upstairs bedroom. Additionally, a vacuum cleaner was blocking a door opening into the hallway to the bedrooms that, Deputy Cox suggested, might have fallen off the top step when a door was opened to warn Morgan when his wife was coming downstairs. Fifth, the nearly twenty-five stab wounds offered proof of Morgan's purpose, which the jury could believe suggested that Morgan was not insane at the time of the murder. *See Dansby v. State*, 319 Ark. 506, 515, 893 S.W.2d 331 (1995).

▆▆▆ Even if the medical testimony was uncontroverted, the jury could have disbelieved or believed any witness testimony regarding Morgan's insanity at the time of the murder, and there was sufficient evidence to submit the case to the jury and substantial evidence supporting the jury's verdict. Accordingly, the trial court did not err by denying Morgan's directed-verdict motion.

### IV.   Motion for Order of Acquittal

All of the doctors who examined Morgan diagnosed him with delusional disorder, persecutory type, and each opined that Morgan lacked the capacity to have the culpable mental state to commit the offense. In a May 16, 1996 report, Drs. Doi and Dilday requested that the trial court enter an order of acquittal pursuant to Ark. Code Ann. § 5-2-313 (Repl. 1997). However, after a hearing on June 17, 1996, the court denied the motion.

Morgan contends that the trial court abused its discretion by denying his motion for acquittal. He argues that the uncontroverted medical testimony and the jury's ignorance of sentencing options (that Morgan could be committed to the State Hospital and not be set free, if found not guilty by reason of mental disease or defect) compels this court to reverse the trial court. Unfortunately, Morgan cites no relevant case law or persuasive authority to support his argument, and, as noted above, this court does not consider arguments without authority or convincing argument

where it is not apparent without further research that the argument is well-taken. *Matthews*, 327 Ark. 70.

In any event, a court may, after a hearing if one is requested, enter a judgment of acquittal on the ground of mental disease or defect if the court is satisfied that the defendant lacked the capacity at the time of the conduct charged, as a result of mental disease or defect, to conform his conduct to the requirements of law or to appreciate the criminality of his conduct. Ark. Code Ann. § 5-2-313 (Repl. 1997). However, where there are questions of fact remaining concerning the defendant's affirmative defense of insanity, a directed verdict of acquittal is properly denied. *Phillips*, 314 Ark. at 536-37. Notably, a trial court's decision to direct an acquittal under section 5-2-313 is discretionary. *Id.* at 536. The State's evidence offered to show premeditation raised questions of fact regarding Morgan's affirmative defense of insanity that justified denying the motion for acquittal. Accordingly, the trial court did not abuse its discretion in denying Morgan's motion for an order of acquittal.

## V. Exclusion of Evidence

Morgan's final point on appeal contests the trial court's exclusion of an order committing Morgan to the State Hospital. Dr. Doi testified that Morgan was incompetent to stand trial as of January 10, 1996 and also reported that Morgan was committed to the State Hospital by court order until his fitness to proceed was restored. Dr. Doi provided a detailed report, introduced into evidence, analyzing Morgan's mental condition. Decisions regarding the relevancy of evidence fall within the trial court's broad discretion and are not reversed absent an abuse of that discretion. *Bowden v. State*, 328 Ark. 15, 17, 940 S.W.2d 494 (1997). Arguably, the fact that Morgan was committed to the State Hospital and incompetent to stand for trial approximately one year after the offense had no relevance to his competency on March 10, 1995, the date of the offense.

Even if the exclusion was error, it was harmless. Dr. Doi's testimony and detailed report provided the best evidence of Morgan's mental condition, and the commitment order merely

provided cumulative evidence. See *Jones v. State*, 326 Ark. 61, 65-55, 931 S.W.2d 83 (1996), which held that evidentiary error is harmless if the same or similar evidence was otherwise introduced. Accordingly, the trial court did not abuse its discretion in refusing to admit the commitment order into evidence.

In conclusion, we affirm the trial court's denial of appellant's motion to dismiss; motion for a continuance; motion for dismissal or directed verdict; and motion for order of acquittal. We also affirm the trial court's exclusion from evidence of an order committing appellant to the Arkansas State Hospital.

NEWBERN, BROWN, and THORNTON, JJ., dissent.

RAY THORNTON, Justice, dissenting. I cannot agree with the majority's determination that the trial court did not err in denying Morgan's motion for a continuance. Morgan moved for a continuance based on the unavailability of his expert witness, Dr. Travis Tunnell, a psychologist. Dr. Tunnell was the only defense expert that Morgan retained to examine him and to testify with respect to his affirmative defense of mental disease or defect. Dr. Tunnell had been served and was purportedly prepared to testify at the trial that was scheduled for January 21, 1997.

On January 7, 1997, Dr. Tunnell suffered a medical emergency that resulted in his undergoing open heart surgery. Morgan did not learn of Dr. Tunnell's illness until Friday, January 17. He promptly filed a motion for a continuance on Monday, January 20, 1997, the day before the trial was scheduled to begin. Morgan stated in his motion that he had been informed that, as a consequence of the surgery, Dr. Tunnell would be unavailable to testify for approximately eight weeks. In his motion, Morgan requested that the trial be continued until Dr. Tunnell was able to appear and testify because Dr. Tunnell's testimony was to be a vital part of his affirmative insanity defense. Morgan asserted that because Dr. Tunnell's tests were unique and were administered at unique times during his incarceration, the testimony would not be cumulative. Morgan filed an affidavit stating that he expected Dr. Tunnell to testify that Morgan could not appreciate the criminality of his conduct or possess the requisite culpable mental state to commit

the offense. The trial court denied Morgan's motion, and the trial began on January 21, 1997.

Both the United States Constitution and the Arkansas Constitution expressly provide that the accused in all criminal prosecutions shall not only have the right to confront witnesses against him, but also "shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. 6; Ark. Const., art. II, § 10.

Ninety-five years ago, this court recognized the importance of preserving an accused's constitutional rights to securing the testimony of his witnesses. *Price v. State*, 71 Ark. 180, 182, 71 S.W. 948, 949 (1903). In *Price*, the defendant had requested a continuance because of the absence of a witness who was extremely sick. The defendant followed the procedural requirements by setting forth the anticipated testimony of the witness in order to establish that the testimony was material to his defense. He also averred that the witness's illness was not commonly fatal or of long duration. The trial court denied the motion for a continuance and ordered the witness's deposition to be taken instead. The defendant objected, claiming his right to compulsory process to secure her attendance. In reversing the trial court's denial of the motion for a continuance, we stated the following:

> The fact that the witness was sick and unable to attend was not a circumstance to be made to work to the prejudice of the defendant. The state could better afford to suffer a continuance than to have one of her citizens deprived of evidence that might save him from a conviction of so grave a crime, and from so serious a punishment as incarceration in the penitentiary. While the subject of continuance is one over which the trial courts have a sound discretion, and their discretion will not be controlled except in cases where discretion is abused, yet in the latter case this court will not hesitate to reverse. We think the defendant has been deprived of evidence, without any fault of his own, which might possibly have secured a verdict of acquittal. This being true, the trial court erred in not granting the continuance as asked.

*Id.* at 182, 71 S.W. at 949.

It is well settled that a motion for a continuance is addressed to the sound discretion of the trial court, and a decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *See, e.g., Miller v. State*, 328 Ark. 121, 942 S.W.2d 825 (1997). However, this court has previously stated that this discretion with which the court is vested is a "judicial discretion," and not a discretion that can be exercised arbitrarily. *King v. State*, 177 Ark. 812, 815, 7 S.W.2d 987, 988 (1928); *see also Burt v. State*, 160 Ark. 201, 256 S.W. 361 (1923); *cf. Wood v. State*, 159 Ark. 671, 252 S.W. 897 (1923) (holding that the denial of the motion for a continuance was not an abuse of discretion where the appellant made no showing regarding the character or anticipated duration of the illness and made no application for attachment of the witness).

In the case at bar, the trial court, in denying Morgan's motion for a continuance, was also looking at Morgan's motion to dismiss for lack of speedy trial. We must carefully differentiate these rights.

In addressing motions for continuances, our Rules of Criminal Procedure provide that the "court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also *the public interest in prompt disposition of the case.*" Ark. R. Crim. P. 27.3 (emphasis added). The United States Constitution and the Arkansas Constitution both contain provisions granting an accused the right to a speedy trial. U.S. Const. amend. 6; Ark. Const., art. II, § 10.

However, we have also stated that a speedy trial is desirable and proper only so long as it does not prevent the accused from receiving a fair trial. *Bell v. State*, 296 Ark. 458, 466, 757 S.W.2d 937, 941 (1988). In a similar vein, the federal court has determined that it was necessary to grant a motion for a continuance to make a potentially material witness available in order to serve the "ends of justice." *United States v. Brewer*, 515 F. Supp. 644, 646 (E.D. Ark. 1981). The court specifically found that "the need for

such continuance outweighs the best interest of the public and the defendant in a speedy trial." *Id.*

Here, the trial court would not have prejudiced the State's interest in bringing Morgan to trial within the parameters of our speedy-trial rule because the period of delay caused by Dr. Tunnell's absence would clearly have been chargeable to Morgan. *See* Ark. R. Crim. P. 28.3(c).

The majority correctly lists four factors that the trial court should consider in determining whether a continuance should be granted. In my opinion, these factors have been met: (1) Morgan filed his motion three days, which included a weekend, after learning of Dr. Tunnell's illness, thereby exercising due diligence in moving for the continuance; (2) Dr. Tunnell's testimony was important because he was Morgan's only retained expert witness to testify regarding his mental state, which was pivotal to the outcome of the trial; (3) it was highly likely that the trial court could have secured Dr. Tunnell's attendance at trial in the event of a postponement; and (4) Morgan complied with our statutory requirement and filed an affidavit, stating not only what facts the witness would prove, but also that Morgan believed them to be true. Morgan also substantiated his motion with a letter from Dr. Tunnell's treating physician, stating the nature and anticipated duration of Dr. Tunnell's recovery.

In my view, consideration of these factors fully supported the request for a continuance. It is true that even without the help of his expert witness, Morgan was able to develop a consensus that he lacked the mental intent to commit the charged offense through examination of other witnesses, including the State's expert witnesses. However, these witnesses had not testified regarding three psychological tests, which Dr. Tunnell performed on Morgan at unique times during his incarceration. Further, the jury did not accept the testimony of these witnesses as proving that Morgan was not guilty by reason of mental disease or defect at the time of the offense. The jury was not given the opportunity to consider the testimony of Morgan's *only* retained expert witness in reaching its verdict. Dr. Tunnell's absence at trial also meant that he was unable to assist Morgan in his examination of the State's experts.

We have stated that a jury is not required to accept an expert's opinion, *see Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992), but I maintain that the jury should not be denied an opportunity to hear that testimony when the expert's opinion is based on tests not administered by other experts and when that testimony could have easily been made available by granting the requested continuance. For the foregoing reasons, I believe that the trial court abused its discretion in denying Morgan's motion for a continuance. I would reverse the trial court's decision on this point.

NEWBERN and BROWN, JJ., join in this dissent.