

# SUPREME COURT OF ARKANSAS

No. CR–12–475

| | |
|---|---|
| | **Opinion Delivered** October 3, 2013 |
| STEVEN J. RUSSELL | APPEAL FROM THE PULASKI |
| APPELLANT | COUNTY CIRCUIT COURT, FIFTH DIVISION |
| | [NO. CR2009-4519] |
| V. | |
| | HONORABLE WENDELL L. GRIFFEN, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED. |

**JOSEPHINE LINKER HART, Associate Justice**

Appellant, Steven J. Russell, was found guilty of capital murder and sentenced to life imprisonment without parole with an additional fifteen years' imprisonment on a firearm sentencing enhancement. This appeal is properly before this court as a criminal appeal in which life imprisonment has been imposed. Ark. Sup. Ct. R. 1–2(a)(2) (2013). On appeal, Russell first contends that at the time of the charged conduct, he lacked capacity as a result of mental disease or defect to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct, and thus, the circuit court should have granted Russell's motion for acquittal. In a second point, Russell asserts that the circuit court erred in denying his mistrial motion after the jury announced that it was deadlocked. We affirm.

The State charged Russell with capital murder, alleging that, while acting with a premeditated and deliberated purpose, he caused the death of Joy Owens. The circuit court ordered a mental-health evaluation by the Division of Mental Health Services of the



Department of Human Services. Russell later moved for acquittal by reason of mental disease or defect. In his motion, he stated that Dr. Ron Faupel, a psychologist for the Arkansas State Hospital, issued a report in which he opined that at the time of the charged conduct Russell lacked the capacity to conform his conduct to the requirements of the law. Russell asserted that the finding was "consistent with a long history of mental illness which was being treated by the North Little Rock Veterans Administration Hospital," that "[s]ome of the impairment appears to have arisen out of combat duty in Iraq and the adjustments to coming home," and that he had been diagnosed with Post Traumatic Stress Disorder (PTSD). Russell further noted in his motion that after the State had received Dr. Faupel's report, it asked for and received an evaluation by Dr. Bradley Diner, a psychiatrist, who disagreed with Dr. Faupel. Russell had then obtained another evaluation by Dr. James Moneypenny, a psychologist, who concurred in Dr. Faupel's findings.

The circuit court held a hearing on Russell's motion. At the hearing, Dr. Moneypenny testified that Russell's history was consistent with a diagnosis of PTSD. Dr. Moneypenny also noted that Russell suffered from depression with psychotic features and concluded that Russell likely was experiencing psychosis at the time of the shooting. He opined that, at the time of the charged conduct, Russell could not conform his conduct to the requirements of the law or appreciate the criminality of his conduct. In a written report attached to Russell's motion, Dr. Moneypenny opined that Russell was suffering from a mental disease or defect at the time of the shooting and could not appreciate the criminality of his conduct or conform his behavior to the requirements of the law, noting that Russell's history and prior evaluations

SLIP OPINION

reflected the presence of psychosis and acute emotional distress.

Dr. Faupel testified that he agreed with Dr. Moneypenny's testimony. He further testified that Russell's actions were consistent with a diagnosis of PTSD. In a written report attached to Russell's motion, Dr. Faupel opined that at the time of the charged conduct, Russell was suffering from a mental disease or defect. He further opined that Russell lacked the capacity for the culpable mental state, noting that there was a high probability that Russell was responding to auditory hallucinations and had an impaired perception of reality due to flashbacks of traumatic events in his life. Dr. Faupel also stated that Russell lacked the capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law, as he was suffering from an impaired perception of reality.

Dr. Diner, however, testified that he did not agree that Russell was unable to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct. While acknowledging that Russell met the criteria for PTSD, he concluded that Russell's conduct at the time of the shooting did not equate with Russell suffering from a dissociative reaction when he shot Owens. He stated that Russell had engaged in purposeful activities both before and after the shooting. He noted that Russell argued with Owens before the shooting, that there was a delay in time between the first three shots fired and the fourth shot fired, and that after the shooting he contemplated suicide and drove to Burns Park.

After hearing the testimony, the circuit court found that the testimony was in conflict. The court noted that both Dr. Moneypenney and Dr. Faupel opined that Russell lacked the capacity as a result of mental disease or defect to conform his conduct to the requirements of

SLIP OPINION

the law, while Dr. Diner opined that Russell did suffer from PTSD but did not believe that he had a dissociative reaction at the time of the shooting. The court concluded that because the testimony was decidedly in conflict, the matter must be tried to a jury. Russell appeals this decision.

On appeal, Russell asserts that the circuit court failed in its role as "gatekeeper" and should have rendered before trial a finding of not guilty by reason of mental disease or defect, as he lacked the capacity to appreciate the criminality of his conduct or to conform his actions to the law. Russell asserts in his brief that the evidence established that he suffered from PTSD, depression, and alcoholism. He asserts that the forensic examinations supported his claim that he suffered from mental disease or defect. He also argues that the first, singular examination, which was conducted by Dr. Faupel, was unequivocal and supported his claim and that the State should not have had a "second bite of the apple."

On the question of the affirmative defense of lack of capacity, our criminal statutes provide as follows:

> (a)(1) It is an affirmative defense to a prosecution that at the time the defendant engaged in the conduct charged he or she lacked capacity as a result of mental disease or defect to:
>     (A) Conform his or her conduct to the requirements of law; or
>     (B) Appreciate the criminality of his or her conduct.

Ark. Code Ann. § 5-2-312 (Repl. 2006). When the issue is raised, the circuit court follows the statutory procedures for a forensic examination. Ark. Code Ann. § 5-2-305 (Supp. 2011). On the basis of a forensic-examination report, and after a requested hearing, "the court may enter judgment of acquittal on the ground of mental disease or defect" if, among other court

SLIP OPINION

findings, the court finds that "[a]t the time of the conduct charged, the defendant lacked capacity as a result of mental disease or defect to conform his or her conduct to the requirements of law or to appreciate the criminality of his or her conduct." Ark. Code Ann. § 5-2-313(a)(2) (Repl. 2006). A defendant must prove an affirmative defense by a preponderance of the evidence. Ark. Code Ann. § 5-1-111(d)(1) (Repl. 2006).

Thus, under Arkansas Code Annotated section 5-2-313(a), the circuit court "may" enter judgment of acquittal on the ground of mental disease or defect if the defendant lacked capacity as a result of mental disease or defect to conform his or her conduct to the requirements of the law or to appreciate the criminality of his or her conduct. That decision, however, is within the circuit court's discretion. *Morgan v. State*, 333 Ark. 294, 305, 971 S.W.2d 219, 224 (1998). Here, the circuit court was confronted with conflicting forensic evaluations. While Faupel and Moneypenny found that Russell lacked capacity as a result of mental disease or defect to conform his conduct to the requirements of the law or to appreciate the criminality of his conduct, the court also had before it Dr. Diner's opinion to the contrary. The existence of conflicting proof and the consequent questions of fact that arose from these conflicts supported the circuit court's discretionary decision to deny Russell's motion for acquittal. *See id.* at 304–05, 971 S.W.2d at 224–25 (holding that the circuit court did not abuse its discretion in denying a motion for acquittal when there are questions of fact remaining concerning the defendant's affirmative defense of mental disease or defect). Thus, we hold that the circuit court did not abuse its discretion in denying Russell's motion for acquittal. While Russell further argues that the State was bound by Dr. Faupel's initial

evaluation, that argument was not preserved for appellate review, as the argument was not presented to the circuit court. *See, e.g.*, *Gilliland v. State*, 2010 Ark. 135, at 12, 361 S.W.3d 279, 286.

For his second point on appeal, Russell contends that the circuit court erred in denying his motion for a mistrial when the jury announced that it was deadlocked. The record shows that after the jury had begun deliberations, it sent a series of notes to the circuit court. In the last of these notes, which the circuit court received at 5:22 p.m., the jury wrote that it was deadlocked, with one member of the jury voting to convict Russell of capital murder and who would not agree to any lesser charge, with the other jurors in agreement to convict Russell of first-degree murder. The jury wrote that there was "no changing of minds" and asked if this constituted a "hung jury." The court wrote back, asking, "Do you think that you may be able to deliberate toward a verdict after a night of rest?" The court asked defense counsel whether he had any objection to the court's note, and Russell's attorney stated, "No objections to the question, Your Honor, but I would like to put on the record a motion for mistrial." The court denied the motion. The court went into recess at 5:41 p.m., pending the return of the jury. At 6:06 p.m., the jury returned to the courtroom. The jury delivered a verdict finding Russell guilty of capital murder.

On appeal, Russell asserts that "[o]ver the objection of counsel for [Russell], the trial judge invited the jury, effectively, to give up their weekend for this self-professed killer and come back and work some more on Saturday." He contends that the "prejudice here is clear," as within a few minutes, the jury, which was 11 to 1 for a lesser-included offense, came back

with a unanimous verdict to convict Russell of capital murder.

Russell, however, did not make this argument to the circuit court. Although he moved for a mistrial, he did not state the basis for his mistrial motion. In order to preserve for appellate review an argument that the circuit court erred in denying a motion for mistrial, the motion must be specific enough to apprise the court of the particular error alleged. *Dorn v. State*, 360 Ark. 1, 4, 199 S.W.3d 647, 649 (2004). Thus, the argument Russell now makes on appeal was not preserved for appellate review.

Finally, because Russell received a sentence of life imprisonment, in accordance with Arkansas Supreme Court Rule 4–3(i) (2013), the record in this case has been examined for objections, motions, and requests made by either party that were decided adversely to Russell. No prejudicial error has been found.

Affirmed.

*David O. Bowen*; and *Rickey H. Hicks*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *LeaAnn J. Adams*, Ass't Att'y Gen., for appellee.